164 F.3d 286
 59 Soc.Sec.Rep.Ser. 624
 Sheena BOATMAN; Bonita Boatman; Michael Boatman; Teah
Boatman; Christopher White; Christine Brewer;
Johnna Smith, Plaintiffs-Appellants,
v.
Marva Livingston HAMMONS, Director, Michigan Family
Independence Agency and James K. Haveman, Jr.,
Director, Michigan Department of
Community Health, Defendants-Appellees.
 No. 97-1530.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 15, 1998.
Decided Dec. 18, 1998.
 
 Jacqueline Doig (argued and briefed), Terri L. Stangl (briefed), Center for Civil Justice, Saginaw, Michigan, for Plaintiffs-Appellants.
 Stephen H. Garrard (argued and briefed), Assistant Attorney General, Office of the Attorney General of Michigan, Social Services Division, Grand Rapids, Michigan, for Defendants-Appellees.
 Before: MERRITT, BOGGS, and SUHRHEINRICH, Circuit Judges.
 OPINION
 MERRITT, Circuit Judge.
 
 
 1
 This appeal arises from a class action lawsuit challenging Michigan's Medicaid transportation policy. Plaintiffs are Michigan Medicaid recipients who bring this action pursuant to 42 U.S.C. § 1983, claiming that the defendant administrators are failing to comply with the requirements of federal law by (1) failing to provide written notice when Medicaid transportation requests are denied; (2) failing to provide sufficient information about transportation assistance; and (3) failing to achieve uniform statewide operation of transportation policy. Defendant Gerald Miller is the Director of the Michigan Family Independence Agency ("Agency"). Defendant James K. Haveman is the Director of the Michigan Department of Community Health.
 
 
 2
 The objective of Medicaid is to provide health care for the poor. It is jointly funded and administered by the states and the federal government pursuant to Title XIX of the Social Security Act. 42 U.S.C. § 1396 et seq. Federal law requires each state to designate a single state agency to administer the program. 42 U.S.C. § 1396a(a)(5). Michigan created the Family Independence Agency for this purpose. At the federal level, Medicaid is administered by the Health Care Financing Administration of the Department of Health and Human Services. States must provide written plans to the Health Care Financing Administration describing how they will administer their Medicaid program and must follow federal law in managing the program. 42 C.F.R. § 430.10--430.20; Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).
 
 
 3
 Under 42 C.F.R. § 431.53, a state Medicaid plan must (a) specify that the Medicaid agency will ensure necessary transportation for recipients to and from providers; and (b) describe the methods that the agency will use to meet this requirement. Michigan's written policy on Medicaid transportation assistance is contained in the Agency's Program Administrative Manual ("Manual") at Item 825. The Manual provides that transportation must be ensured for visits to any Medicaid provider. Although transportation is ensured, payment to recipients for transportation is not required. The Manual states at Item 825:
 
 
 4
 If the recipient, or their family, neighbors, friends, relatives, etc. can provide transportation, they are expected to do so, without reimbursement. If transportation has been provided at no cost, it is reasonable to expect them to continue to do so, except in extreme changed circumstances or evident hardship.
 
 
 5
 For those without family or friends to provide transportation, Michigan's policy directs Medicaid administrators to utilize referrals to public or nonprofit agencies who might provide transportation without reimbursement. If a public or nonprofit agency is not available to provide transportation, Michigan policy allows Medicaid caseworkers to take steps to pay for transportation.
 
 
 6
 Federal Medicaid regulations require state Medicaid agencies to provide Medicaid applicants and recipients with written information listing available Medicaid services. 42 C.F.R. § 435.905. The Agency sends each person requesting Medicaid, and places on display in the reception area of its local offices, a pamphlet titled "Facts About Medicaid." Under the heading, "What does Medicaid pay for?," the pamphlet lists "ambulance services", followed by an asterisk. Under the asterisk at the bottom of the section, the pamphlet states "contact your local DSS (Department of Social Services) office about other transportation to a Medicaid covered service." In addition, the Agency sends all Medicaid recipients a publication titled "Questions and Answers About Medicaid" with their first Medicaid card and once each year thereafter. The most recent edition contains the same information as the pamphlet.
 
 
 7
 There is no written application form for Medicaid recipients who seek transportation assistance, nor is there any requirement that caseworkers record a request for transportation assistance. Medicaid caseworkers are not required to issue written denials or maintain written records of the disposition of transportation assistance requests.
 
 
 8
 The District Court dismissed the complaint on motions for summary judgment. For the reasons that follow, we REVERSE the district court in part and AFFIRM in part and remand for proceedings consistent with this opinion.
 
 
 9
 1. Written Notice.-- Plaintiffs assert that they are entitled to written notice of denials of transportation assistance, the reason for the denial, and a hearing under 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. §§ 431.206 and .210. Title 42, Section 1396a(a)(3) of the United States Code states that a state plan for medical assistance must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied...." Title 42, Section 431.206 of the Code of Federal Regulations provides that the state agency must issue and publicize its hearing procedures, and must inform every recipient in writing of his right to a hearing and of the method by which he may obtain a hearing at the time of any action affecting his claim. 42 C.F.R. §§ 431.210 and .211 assert that the state agency must give notice to the recipient at least 10 days before the date of an action affecting his claim. This notice must specify the action the agency intends to take, the reasons therefore, and explain the recipient's hearing rights. An "action" is defined as "a termination, suspension, or reduction of Medicaid eligibility or covered services...." 42 C.F.R. § 431.201.
 
 
 10
 The district court reasoned that because Michigan is not required to pay for or provide transportation assistance, transportation assistance is not a "covered service" under Medicaid. Therefore, the district court found that a denial of state-funded transportation is not an "action" under Medicaid triggering the requirement that Michigan provide applicants a hearing and notice of the denial of transportation assistance.
 
 
 11
 The district court erred on this point. Michigan has a duty to ensure that transportation is available to Medicaid recipients. Thus, "ensured transportation" is a covered service under Medicaid. Without notice and a hearing, Medicaid recipients cannot enforce their right to state ensured transportation. Under some circumstances, Michigan's refusal to pay for or provide transportation assistance may mean that Michigan has failed to ensure such assistance. Some explanation for case worker denial of transportation assistance should be given in writing, and this written communication should include the fact that there are review procedures available.
 
 
 12
 We are aware of the Eleventh Circuit's recent decision in Harris v. James, 127 F.3d 993 (11th Cir.1997), which held that the state-ensured transportation regulation (42 C.F.R. § 431.53) does not define the content of any specific "statutory" right conferred upon Medicaid recipients by Congress, and thus, is not enforceable in a § 1983 action. This Circuit has held to the contrary that because federal regulations have the force of law, they must be characterized as "law" under § 1983. See Loschiavo v. City of Dearborn, 33 F.3d 548, 551 (6th Cir.1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995), citing Wright v. Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); see also West Virginia Univ. Hospitals, Inc. v. Casey, 885 F.2d 11, 18 (3d Cir.1989) (asserting that federal regulations may create rights enforceable under § 1983), cert. denied, 496 U.S. 936, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990). The content of the federal regulation at issue here is clear--states must ensure that Medicaid recipients have transportation to and from medical service providers. It is therefore necessary to provide applicants with written notice of a denial of assistance, including some explanation of the reasons therefor and the availability of review of the decision.
 
 
 13
 Plaintiffs also assert that Medicaid recipients are entitled to written notice under the Due Process Clause of the Fourteenth Amendment when their requests for transportation assistance are denied. Since we have resolved this issue on plaintiffs' statutory claim, we need not address the constitutional question. See e.g., Minnick v. California Dept. of Corrections, 452 U.S. 105, 122-27, 101 S.Ct. 2211, 68 L.Ed.2d 706 (1981).
 
 
 14
 2. Information about Availability of Transportation Assistance.-- Title 42, Section 435.905 of the Code of Federal Regulations states:
 
 
 15
 (a) The agency must furnish the following information in written form and orally as appropriate, to all applicants and to all other individuals who request it:
 
 
 16
 (1) The eligibility requirements.
 
 
 17
 (2) Available Medicaid services.
 
 
 18
 (3) The rights and responsibilities of applicants and recipients.
 
 
 19
 (b) The agency must publish in quantity and make available bulletins or pamphlets that explain the rules governing eligibility and appeals in simple and understandable terms.
 
 
 20
 Plaintiffs allege that defendants are violating this regulation because the pamphlets issued by Michigan do not provide written information about Medicaid transportation services and the eligibility requirements for receiving such services.
 
 
 21
 The Agency's two Medicaid related publications, "Questions and Answers About Medicaid" and "Facts About Medicaid," do not explicitly tell their readers that the state must ensure recipients transportation to and from medical service providers. Instead, the publications list "ambulance" followed by an asterisk as a covered service. The asterisk directs readers to "Contact your local DSS (Department of Social Services) office about other transportation to a Medicaid covered service."
 
 
 22
 Providing information that directs readers to inquire about transportation services is not the same as explicitly acknowledging in writing the requirement that recipients have the right to state-ensured transportation to and from medical service providers. The terms of the regulation at 42 C.F.R. § 435.905 require defendants to identify available Medicaid services in written form. The defendants have not done so and are therefore in violation of the regulation.
 
 
 23
 The district court found that because 42 C.F.R. § 435.905(a) requires that states furnish information only to "applicants and all other individuals who request it," the Agency need only inform applicants of the availability of transportation services and need not inform recipients unless they request such information. The plaintiff class is wholly composed of Medicaid recipients, not applicants.
 
 
 24
 In so holding the district court cited the Supreme Court's decision in Gardebring v. Jenkins, 485 U.S. 415, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988). Gardebring involved an Aid to Families with Dependent Children (AFDC) recipient's challenge to the "lump sum" amendment to the AFDC statute. The amendment provided that a family receiving nonrecurring lump sum income is ineligible for benefits for the number of months the income would satisfy the family's standard of need. The plaintiff's husband received a lump sum Social Security disability payment, which was expended within two days to pay family bills. The plaintiff reported the receipt and expenditure of the lump sum payment to her Minnesota Department of Human Services caseworker and was advised that because of the amendment her family would be ineligible for benefits for the next several months. The Federal District Court held that Minnesota's application of the new lump sum rule without adequate notice to AFDC applicants and recipients violated the following federal notice regulation:
 
 
 25
 Applicants shall be informed about the eligibility requirements and their rights and obligations under the program. Under this requirement individuals are given information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program, and related services available, and the rights and responsibilities of applicants for and recipients of assistance. Specifically developed bulletins or pamphlets explaining the rules regarding eligibility and appeals in simple, understandable terms are publicized and available in quantity.
 
 
 26
 45 C.F.R. § 206.10(a)(2)(i).
 
 
 27
 The Court of Appeals affirmed the district court. The Supreme Court reversed, holding that the regulation established that only applicants are subject to this requirement and that the regulation requires only that general program information be available, creating no duty to inform about specific amendments. Id. at 428-29, 108 S.Ct. 1306.
 
 
 28
 There are two substantive differences between this case and Gardebring. First, the regulation at issue, 42 C.F.R. § 435.905 requires the Medicaid agency to do more than provide "general program information." It requires that available Medicaid services be listed in written form. Furthermore, although 42 C.F.R. § 435.905, like the regulation in Gardebring, speaks to the rights of applicants, not recipients, that distinction is unimportant. In Gardebring, the information about the lump sum rule did not exist when many of the plaintiffs applied for benefits. The regulation at issue here is as old as the Medicaid statute. See 33 Fed.Reg. 16,165 (1968). The regulation was in effect at the time all of the plaintiffs applied for Medicaid. Upon application each plaintiff should have been given clear written information about their entitlement to state-ensured transportation. By failing to give such information, Michigan has breached a duty to all class plaintiffs.
 
 
 29
 3. Statewide Transportation Program.-- In a cryptically drafted Count IV of their complaint, plaintiffs argue that defendants have failed to establish a Medicaid transportation program which is statewide and operated pursuant to uniform application and denial procedures. This complaint is based on 42 U.S.C. § 1396a(a)(1), which provides:
 
 
 30
 (a) A state plan for medical assistance must-
 
 
 31
 (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them;
 
 
 32
 42 C.F.R. § 431.50(b)(1) implements the policy expressed in 42 U.S.C. § 1396a(a)(1) and states in pertinent part:
 
 
 33
 (b) State plan requirements. A State Plan must provide that the following requirements are met:
 
 
 34
 (1) The plan will be in operation statewide through a system of local offices, under equitable standards for assistance and administration that are mandatory throughout the State.
 
 
 35
 ...
 
 
 36
 (3) The agency will ensure that the plan is continuously in operation in all local offices or agencies through--
 
 
 37
 (i) Methods for informing staff of state policies, standards, procedures, and instructions;
 
 
 38
 (ii) Systematic planned examination and evaluation of operations in local offices by regularly assigned state staff who make regular visits; and
 
 
 39
 (iii) Reports, controls, or other methods.
 
 
 40
 Michigan has prepared a Program Administrative Manual which is used in every local Medicaid office to inform Medicaid supervisors and caseworkers of "policies, standards, procedures and instructions" to be used in implementing the Medicaid program. After reviewing the Manual, the district court concluded:
 
 
 41
 On its face, Item 825 complies with these requirements. The transportation policy is mandatory and in effect in every county in the state of Michigan. See 42 U.S.C. § 1396a(a)(1). There is no dispute that the plan is in operation throughout the state through a system of local offices. 42 C.F.R. § 431.50(b)(1) & (2). The program has a method for informing the staff of the policies and procedures. That is the purpose behind PAM (Program Administrative Manual) Item 825. 42 C.F.R. § 431.50(b)(3)(ii) & (iii). That system, though not specifically designed to review compliance with the transportation policy, results in significant examination and evaluation of the county offices.
 
 
 42
 The affidavit of Delois Whitaker Caldwell, Director of the Agency's Family Services Administration stated:
 
 
 43
 3. There are 83 counties in the state, all of which have county FIA [Family Independence Agency] offices. In my position as Director of FSA [Family Services Administration] I am responsible for, among other things, assuring that county FIA offices are complying with the requirements of state and federal benefits assistance programs. I receive, and along with zone and central FIA office staff, review reports and audits of Wayne County and Outstate Operations. I have knowledge relating to the methods used by FIA to monitor the operations of the counties. Attached hereto is a document defining the role of the "zone" in statewide administration.
 
 
 44
 4. In order to monitor the operations of county FIA offices, I receive centrally produced reports relating to, among other things, the assistance benefits programs utilized, the number of customers served, the monetary expenditures for benefits processed, standards of promptness and accuracy. Zone staff is also required to meet regularly with the Assistance Payments (AP) Supervisors of the counties to discuss present or ongoing issues, update supervisors on changes in policy and receive feedback relating to county operations.
 
 
 45
 5. Every supervisor in the assistance benefits area who has AP workers under them is required to do a quota of "case readings" of the AP staff in their counties to assure that standards are being met and that accuracy in program administration is maintained.
 
 
 46
 6. At least annually zone staff undertake visits to each county to go over AP procedures, discuss problems and discuss county goals. Quality analysts are also employed at the county or zone level. They complete audits and analysis of county operations at either zone or county request.
 
 
 47
 The requirements imposed by 42 C.F.R. § 431.50 are vague, and the district court did not err in determining that Michigan has satisfied its obligations under the regulation.
 
 
 48
 The plaintiffs also contend that 42 C.F.R § 431.50 requires that the Medicaid program "operate uniformily" throughout all parts of Michigan and that a lack of uniformity is demonstrated by the divergent expenditures of Michigan counties on transportation services. Mere differences in county expenditures do not demonstrate that Michigan fails to ensure uniformity in the administration of Medicaid across its counties. As the district court correctly observed in its Memorandum Opinion of March 31, 1997:
 
 
 49
 Differences in county expenditures created by neutral factors such as population density, geographic conditions, or availability of public transportation do not constitute illegal non-uniform operation of the transportation system.
 
 
 50
 4. Adherence to State Plan.-- The plaintiffs claim that defendants are in violation of 42 C.F.R. § 435.903 which requires a state Medicaid agency to "have methods to keep itself currently informed of the adherence of local agencies to the state plan provisions and the agency's procedures of determining eligibility; and (b) take corrective action to ensure their adherence." The plaintiffs complain that defendants have no record keeping or other systems to make possible meaningful review of local office implementation of Medicaid transportation policy. Finding that adequate monitoring procedures had developed since this litigation, the district court dismissed this claim as moot.
 
 
 51
 Essentially, plaintiffs complain that the failure to record denials of transportation assistance makes it impossible to monitor the implementation of transportation policy. The requirement we impose today--requiring the state Medicaid agency to provide written notice when transportation assistance is denied--should minimize arbitrariness in the application of the transportation policy in Michigan and make effective oversight of local implementation possible.
 
 
 52
 Accordingly, this case is remanded to the district court with instructions to issue an injunction:
 
 
 53
 (1) requiring the defendants to provide written notice to Medicaid recipients at the time of any denial of transportation assistance, containing, as required by 42 C.F.R. § 431.206 & .210:
 
 
 54
 (a) A statement of the denial
 
 
 55
 (b) The reasons for the denial
 
 
 56
 (c) An explanation of the individual's appeal rights
 
 
 57
 (2) Requiring defendants to provide to all applicants and others on request, written information explicitly acknowledging that defendants are obligated to ensure transportation for Medicaid recipients to and from medical service providers.
 
 
 58
 Accordingly, it is so ordered.