DECISION
Before this Court is a Motion for Summary Judgment by plaintiffs Ralph Conti and Angela Rivera seeking declaratory and injunctive relief from the Rhode Island Department of Human Services (DHS). The plaintiffs contend that DHS violated federal law by failing to provide them with necessary non-emergency transportation to and from their medical providers. This Court has jurisdiction pursuant to Rule 56 of the Superior Rules of Civil Procedure, G.L. 1956 § 9-30-1 (Uniform Declaratory Judgments Act), and G.L. 1956 § 42-35-1 et seq.
 Travel/Facts
The plaintiffs Ralph Conti (Conti) and Angela Rivera (Rivera) are disabled Medical Assistance (MA) recipients who seek non-emergency transportation to and from medical providers. Plaintiff Conti receives supplemental security income (SSI) benefits due to disability and is deemed "categorically needy" with an income of less than $585.00 per month. He currently resides in a rural area of Charlestown not readily served by public transportation. Although Conti is eligible to utilize the Rhode Island Public Transit Authority's (RIPTA) RIDE program for individuals with disabilities, he contends that said program requires two weeks advance notice and is limited in its hours of service.
In September 1998, Conti contacted several DHS employees, both by telephone and in writing, seeking an administrative hearing on the non-emergency transportation matter. The Office of Legal Services for DHS responded to Conti's inquiries per letter dated November 9, 1998, stating that
 ". . . there is no issue ripe either for adjudication or for investigation" and suggested that Conti "work with [his] treating physicians as to the best methodologies to manage [his] health conditions." (DHS Office of Legal Services Letter 11/9/1998). The letter also concludes that "[i]f [Conti's] physicians prescribed either or both of the services [he has] requested, then the cost of those services would be met by the Medicare and Medicaid coverage that [he] currently [qualifies] for." (DHS Office of Legal Services Letter 11/9/1998). In a subsequent letter sent to Conti from the DHS, Office of Legal Services, dated November 24, 1998, DHS asserts that "there is no issue ripe for adjudication, the Appeals Office can take no action with respect to [Conti's] premature and unfounded request for an administrative hearing."
(DHS Office of Legal Services Letter 11/24/1998).
However, on March 9, 1999, DHS conducted an administrative hearing after Conti's repeated requests. At hearing, the agency maintained that "non emergency ambulance services are reimbursable for those recipients who cannot sit, stand or walk and transportation by other means would endanger the individual's health." (DHS Decision, 6/18/99 at 2). DHS further maintained that an individual's physician must certify that the requested ambulance services are "medically necessary," which was not the case with Conti. See Id.
At hearing, Conti testified that on October 5, 1998, he was taken by ambulance to the hospital and underwent care there for approximately four hours. At the end of his hospital stay, Conti testified that he was unable to find any transportation home and ultimately reached his residence by hitchhiking for more than twelve miles. Id. Conti asserts that his health will be placed at risk if such a situation occurs again whereby he must walk or hitchhike home from the hospital. Id.
Conti's legal argument relies upon Burgess v. Affleck, C.A. 82-0209 B, January 15, 1986, Boyle, J., wherein the District Court concluded that the DHS policy of "not assuring necessary non-emergency ambulance transportation to the medically needy violates the Social Security Act." As a result of said violation, the judge ordered DHS "to conform to the requirement of the Social Security Act that it assure that the medically needy receive necessary ambulance transportation for the receipt of medical care." Id. at 18. In addition, Conti relies upon42 C.F.R. § 431.53, which requires a state plan to insure necessary transportation for recipients to and from [medical] providers.
In its June 18, 1999, Decision, DHS found as a matter of fact that Conti receives MA benefits as a Categorically Needy individual and that he resides in an area where public transportation is unavailable. DHS Decision, 6/18/99 at 3. Although DHS did not unequivocally deny Conti's request for non-emergency transportation, it concluded that "the only instance which transportation is provided and paid by the agency" is when the individual is non-ambulatory. Id. at 3. DHS states that "because [Conti] was able to hitchhike home [from the hospital on October 5, 1998] it is evident that he was ambulatory upon discharge." Id. at 3. However, DHS further states that Attachment 3.1-A of the State Plan requires that requests for transportation "must be evaluated on an individual basis," and that if a similar incident to the October 1998 occurrence "happens again in the future, then the agency will be required [to] discuss this need on an individual basis with [Conti]." Id. at 4. Ultimately, DHS decided that "[i]t is the decision of this hearing officer that if this need [for transportation] arises at some future date, then emergency transportation services will be made available pursuant to Attachment 3.1 B of the State Plan. This case is dismissed due to lack of jurisdiction as there is no issue before this hearing officer." Id. at 4 (emphasis added).
On October 4, 1999, the plaintiff filed the instant complaint for declaratory and injunctive relief under 42 U.S.C. § 1983 for deprivation of rights, privileges, or immunities secured by the Constitution to remedy violations of federal statutory rights. He alleges that "DHS violates federal law and deprives MA recipients of benefits without due process by failing to insure necessary non-emergency transportation to and from medical providers; failing to have systems in place designed to insure access to transportation; and failing to record requests of transportation and issue written denials (proving opportunity for hearing) when requests for transportation are denied." Complaint 10/4/99 at 1. Plaintiff seeks to enjoin DHS from providing transportation service to only those individuals who are unable to walk, sit, or stand and from failing to provide MA recipients with written informational material regarding covered transportation services or written denials of transportation services with relevant DHS regulations and explanations cited therein. Complaint 10/4/99 at 13.
On July 21, 2000, Angela Rivera was permitted to intervene in the subject matter. She is disabled due to microvascular brain disease and currently participates in the Medical Assistance Program. Rivera Affidavit, 8/1/2000. At the time of filing, Rivera was awaiting a decision on SSI benefits and as a result, receives income of only $200.00 per month. Rivera Affidavit, 8/1/2000.
Rivera maintains that she has up to three medical appointments per week and travels to these appointments via public transportation because she is precluded from driving due to her medical condition. Rivera Affidavit, 8/1/2000. Rivera contends that a round trip bus ticket costs her between $2.50 and $3.50 and that she spends a minimum of between $6.00 and $8.00 per week on transportation. Rivera maintains that it has been necessary for her to cancel medical appointments because she has been unable to afford the bus ticket to the appointment. Rivera Affidavit, 8/1/2000.
On September 14, 2000, plaintiffs filed the instant Motion for Summary Judgment requesting that this Court "declare that DHS' rules, policies, and practices concerning non-emergency transportation and notice and hearing rights violate federal statutes and regulations, fail to ensure necessary transportation, and deprive plaintiffs of benefits without due process." Additionally, plaintiffs seek to enjoin DHS from limiting its coverage of necessary transportation services to persons who are non-ambulatory and for generally failing to insure necessary emergency and non-emergency transportation to and from medical providers on behalf of MA recipients whose health does not require transport via ambulance. Plaintiffs also seek any other relief necessary to secure DHS' compliance with federal law. On January 16, 2001, this Court heard arguments on the aforementioned Motion for Summary Judgment.
 Standard of Review
In order to prevail on a 42 U.S.C. § 1983 claim, a plaintiff must allege deprivation of some constitutional right under color of law. Graff v. Motta, 695 A.2d 486, 492 (R.I. 1997) (citing Bell v. Brennan,570 F. Supp. 1116, 1118 (E.D.Penn. 1983)). "There are two essential components to a viable § 1983 claim. First, the plaintiff must allege and prove that some person or state governmental entity, while acting under color of state law, has deprived him of a federal right secured by federal law or constitution. Second, the plaintiff must identify the federal right alleged to have been violated." Brunelle v. Town of South Kingstown, 700 A.2d 1075, 1081 (R.I. 1997); (citing Parratt v. Taylor,451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981); Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, 1526-27 (1st Cir. 1983)).
Rule 56(c) of Rhode Island Super. R. Civ. P. requires a trial justice to determine the necessity of a trial by identifying genuine issues of material fact in dispute. Capital Properties, Inc. v. State, 749 A.2d 1069, 1079 (R.I. 1999); Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). To avoid summary judgment, the party opposing the motion will not be allowed to rely upon mere allegations or denials in their pleadings; rather, by affidavits or otherwise they have an affirmative duty to set forth specific fact showing that there is a genuine issue of material fact. Id. at 1080; (citing Bourg v. Bristol Boat Co., 705 A.2d 969 (R.I. 1998)). A trial justice may properly grant summary judgment only when, after review of the evidence in the light most favorable to the nonmoving party, the trial justice concludes that there is no ambiguity and the moving party's claim warrants judgment as a matter of law. R. I. Super. R. Civ. P. Rule 56(c); Sindelar v. Leguia,750 A.2d 967, 970 (R.I. 2000); Buonanno v. Colmar Belting Co., 733 A.2d 712, 715 (R.I. 1999) (quoting Textron, Inc. v. Aetna Casualty and Surety Co., 638 A.2d 537, 539 (R.I. 1994)).
Under the Uniform Declaratory Judgment Act, this Court has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. G.L. § 9-30-1. "This Court may also grant further affirmative relief based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto."
Capital Properties, Inc. v. State, 749 A.2d at 1080; R.I.G.L. §§9-30-8 and 9-30-12; (citing Sousa v. Langlois, 97 R.I. 196, 196 A.2d 838
(1964)). According to G.L. § 42-35-7 (Declaratory judgment on validity or applicability of rules):
 "[t]he validity or applicability of any rule may be determined in an action for declaratory judgment in the superior court of Providence County, when it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question."
 The Medical Assistance Program
The Medical Assistance (MA) Program was promulgated for the purpose of furnishing medical assistance to families, aged, blind, or disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396. The Rhode Island MA Program is "the federal/state program to meet the medical needs of low income persons who are age 65 or over, blind, disabled, or members of families with dependent children, or qualified pregnant women and children." I CRIR 18, Rule 15 020 006 at 30 (1994). "The statutory foundations of the Rhode Island MA Program are Title XIX of the Social Security Act [42 U.S.C. § 1396] and Rhode Island General Laws [§] 40-8 [-1 et.seq.]." Id. "DHS determines eligibility for and provides Medical Assistance to Rhode Island residents in two categories — Categorically Needy and Medically Needy." Id. at 30. "The Categorically Needy are those individuals or families eligible for or receiving cash assistance under the SSI or AFDC Programs . . . [while] [t]he Medically Needy are those individuals or families whose resources and/or income exceeds the standards required for eligibility as Categorically Needy, but are within the Medically Needy standards." Id. at 30-31. Federal law requires states which have chosen to participate in the program to provide certain "mandatory services" which include hospital and physician coverage. 42 U.S.C. § 1396d (a) (1-24). Participating states may elect to provide additional coverage by offering other "optional categories of service." See 42 U.S.C. § 1396a(a) (10);42 C.F.R. § 440.210; and 42 U.S.C. § 1396d(a). "Federal statutory provisions allow participating states much discretion in fashioning their MA plans; however, this discretion is not unbridled. Bristol v. R.I. Dept. of Human Services, C.A. Nos. 95-6605, 95-6889, January 30, 1997, Hurst J. The standards a state adopts for determining eligibility and extent of covered services must be `reasonable' and `consistent' with the objectives of the [Social Security] Act." Id. at 3-4 (citing42 U.S.C. § 1396a(a) 17.)
 Enforceable Rights Under § 1983
The relevant federal regulations at issue fall under42 C.F.R. § 431.53 ("Assurance of transportation" which provide that "[a] State plan must — (a) Specify that the Medicaid agency will ensure necessary transportation for recipients to and from providers; and (b) Describe the methods that the agency will use to meet this requirement."
DHS asserts that ensuring necessary transportation to and from medical providers is not an enforceable right under 42 U.S.C. § 1983. In reliance upon this assertion, DHS cites Harris v. James, 127 F.3d 993
(11th Cir. 1997). The plaintiffs in Harris sought to require the Alabama Medicaid Agency to provide necessary medical transportation for Medicaid recipients. The Harris Court averred that "[the transportation] regulation is too far removed from Congressional intent to constitute a `federal right' enforceable under § 1983 . . . [and] [t]o hold otherwise would be inconsistent with the driving force of the Supreme Court precedent requiring a[n] [unambiguous] Congressional intent to create federal rights." Id at 1010. The Harris Court concluded that "the transportation regulation does not define the content of any specific right conferred upon the plaintiffs by Congress . . . [because] the nexus between the regulation and Congressional intent to create federal rights is simply too tenuous . . ." Id. DHS submits that this Court should employ the reasoning by the Eleventh Circuit in Harris.
Conversely, plaintiffs distinguish the aforementioned holding in Harris with the holding by the Sixth Circuit in Boatman v. Hammons, 164 F.3d 286, 289 (6th Cir. 1998). Analogous to Harris, Boatman challenged a State Medicaid transportation policy. However, Boatman determined that
 "because federal regulations have the force of law, they must be characterized as `law' under § 1983."
Id. at 289 (quoting Loschiavo v. City of Dearborn, 33 F.3d 548, 551 (6th Cir. 1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995) (citations omitted). Additionally, plaintiffs rely upon the analysis and holding propounded by the Federal District Court of Rhode Island in Burgess v. Affleck, supra, which also held that "[a]lthough the issue of transportation is not specifically addressed in the statute, it is addressed in the regulations . . . which have the `force and effect of law.'"
Id. at 12 (quoting Chrysler Corporation v. Brown, 441 U.S. 281, 295-6 (1979)).
This Court finds that the plaintiffs have demonstrated that they have been deprived of a federal right secured by a federal regulation which has the "force and effect of law." The Court is satisfied that this right has been identified by plaintiffs and properly falls under the ambits of § 1983.
 Burgess v. Affleck
In determining whether plaintiffs are entitled to judgment as a matter of law, this Court finds the analysis proffered more than fifteen years ago in Burgess v. Affleck, supra, to be directly relevant to the instant controversy-"whether or not the failure of Rhode Island's Medical Assistance Program to assure medically necessary ambulance transportation for the medically needy violates federal law."
Burgess, supra, at 12. In its analysis, Burgess relies upon Smith v. Vowell, 379 F. Supp. 139 (W.D. Tex.) aff'd, 504 F.2d 759 (5th Cir. 1974) for the proposition that providing transportation to the medically needy is an important component to further the goals of the MA program. See Id. at 13-14.
Specifically, Burgess states:
 "The Smith Court held that a State had discretion as to how the transportation requirement would be met, but `the specific goal of adequate medical transportation for the needy is a mandatory duty.'
[Smith, 379 F. Supp. at 151] (emphasis added).
The regulation requiring States to assure medically necessary transportation is based on the fact that unless needy people can get to health care providers, the goal of the Medical Assistance Program will be seriously impaired." (Citation omitted). Id. at 13-14. Burgess concludes that "[t]he State does not have the choice or option of not assuring necessary transportation." Id. at 18. In fact, Burgess states parenthetically that the "State pays for necessary, non-emergency medical ambulance transportation for the categorically needy." Id. at 15. Clearly, this practice has not been enforced in the years following Burgess but shall be relied upon presently.
This Court finds the Burgess analysis to be compelling and adopts its rationale for application to the instant matter. Accordingly, this Court is satisfied that there are no genuine issues of material fact in dispute and that plaintiffs are entitled to judgment as a matter of law. This Court declares that DHS' rules, policies, and practices concerning non-emergency transportation and notice and hearing rights violate federal statutes and regulations. Therefore, DHS is enjoined from limiting its coverage of necessary non-emergency transportation to non-amubulatory individuals only.
 Counsel shall submit the appropriate order for entry.