RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0209P (6th Cir.)
File Name: 02a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

No. 00-5942

BEVERLY K. BARTON,
        *Plaintiff-Appellant,*

v.

PAUL G. SUMMERS, et al.,
        *Defendants-Appellees.*

Nos. 00-5942/6282

No. 00-6282

HARSHELL C. DOWNS, JR.;
KATHLEEN D. DOWNS,
        *Plaintiffs-Appellants,*

v.

COMMONWEALTH OF
KENTUCKY, et al.,
        *Defendants-Appellees.*

Appeal from the United States District Courts
for the Middle District of Tennessee at Nashville and
the Eastern District of Kentucky at Frankfort.
Nos. 00-00078; 00-00023—Todd J. Campbell; Joseph M.
Hood, District Judges.

Argued: November 29, 2001

1

Decided and Filed: June 13, 2002

Before: RYAN, BOGGS, and DAUGHTREY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Antonio Ponvert III, KOSKOFF, KOSKOFF & BIEDER, Bridgeport, Connecticut, for Appellants. Russell T. Perkins, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees. **ON BRIEF:** Antonio Ponvert III, KOSKOFF, KOSKOFF & BIEDER, Bridgeport, Connecticut, Cecil Dewey Branstetter, Jr., James G. Stranch III, BRANSTETTER, KILGORE, STRANCH & JENNINGS, Nashville, Tennessee, Edmund L. Carey, Jr., George E. Barrett, BARRETT, JOHNTSON & PARSLEY, Nashville, Tennessee, Richard M. Guarnieri, J. Guthrie True, JOHNSON, JUDY, TRUE & GUARNIERI, Frankfort, Kentucky, for Appellants. Russell T. Perkins, S. Elizabeth Martin, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, Scott White, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees. James C. Gulick, N. C. DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Amici Curiae.

BOGGS, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. RYAN, J. (p. 19), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

BOGGS, Circuit Judge. Plaintiffs-appellants, Medicaid recipients with tobacco-related illnesses, appeal the dismissal

_____

**CONCURRING IN PART, DISSENTING IN PART**

_____

RYAN, Circuit Judge, concurring in part and dissenting in part. Because I am not convinced that the plaintiffs' claims are barred by the Eleventh Amendment of the United States Constitution, I decline to join Part II (A) of the lead opinion.

I do agree, however, for the reasons so well expressed in Part II (B) of my brother's opinion, that the plaintiffs have not made out an actionable claim for relief under 42 U.S.C. § 1983. Consequently, I join only Part II (B) of Judge Boggs's opinion.

### III

For the foregoing reasons, the district courts' judgments are AFFIRMED.

of their actions seeking injunctions against two states, Kentucky and Tennessee (the States). Plaintiffs seek to intercept tobacco settlement money due to the States under the Master Settlement Agreement between a number of settling states and tobacco manufacturers. We affirm the dismissal of Plaintiffs' claims, because actions seeking money damages from a state contravene the Eleventh Amendment of the United States Constitution. We also hold that Plaintiffs' suits fail because they have not asserted a valid claim.

### I

Plaintiffs seek to represent Kentucky and Tennessee Medicaid recipients with tobacco-related illnesses, for whom the States paid medical bills. Under to the November 1998 Tobacco Master Settlement Agreement (MSA) between 45 states and many tobacco manufacturers, both Kentucky and Tennessee will receive large payments in settlement of their claims. The monies to be paid were placed in escrow, pending the time that a specified percentage of the signatory states achieved "finality" under the terms of the agreement. Now that finality has been achieved, payments are being made from escrow to the States.

In order to implement the national settlement, the MSA required states that did not have a pending lawsuit to institute proceedings in the appropriate state courts. Both of the States filed, and then settled, their MSA-required suits. Plaintiffs, claiming that the States' recoveries were in the form of subrogation actions (*i.e.*, that the States were actually suing on Plaintiffs' behalf), have brought this 42 U.S.C. § 1983 action. Plaintiffs claim that federal law entitles them to any excess money the States will receive over the actual state outlay for Plaintiffs' treatment. Plaintiffs also argue that because they have sued state officials in their official capacities, their action is not barred by state sovereign immunity.

This suit is part of a nationwide series of suits in which Medicaid recipients are seeking to recoup "overage" amounts

from a number of settling states. All but one of the Medicaid recipient suits, including the two instant cases, have been dismissed for failure to state a claim upon which relief could be granted or for Eleventh Amendment immunity. *See Strawser v. Atkins*, No. 01-1175, 2002 U.S. App. LEXIS 9648 (4th Cir. May 22, 2002); *Greenless v. Almond*, 277 F.3d 601 (1st Cir. 2002); *Harris v. Owens*, 264 F.3d 1282 (10th Cir. 2001); *Watson v. Texas*, 261 F.3d 436 (5th Cir. 2001); *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252 (11th Cir. 2001); *Tyler v. Douglas*, 280 F.3d 116 (2d Cir. 2001); *Floyd v. Thompson*, 227 F.3d 1029 (7th Cir. 2000); *Lewis v. State ex rel. Miller*, 2002 Iowa App. LEXIS 436 (Iowa Ct. App. Apr. 24, 2002); *Cardenas v. Anzai*, 128 F. Supp. 2d 704 (D.C. Haw. 2001); *Clark v. Stovall*, 158 F. Supp. 2d 1215 (D.C. Kan. 2001); *Skillings v. Illinois*, 121 F. Supp. 2d 1235 (C.D. Ill. 2000); *Martin v. New Mexico*, 197 F.R.D. 694 (D.N.M. 2000); *Brown v. State*, 617 N.W.2d 421 (Minn. Ct. App. 2000); *State v. Superior Court*, 83 Cal. App. 4th 597 (Cal. App. 2d Dist. 2000); *Oliva v. Florida*, No. 99-2234 (Leon Co. Cir. Ct., 2d Cir. May 12, 2000); *Gomer v. Philip Morris Inc.*, 106 F. Supp. 2d 1262 (M.D. Ala. 2000) (Eleventh Amendment immunity and no valid claim). In one case, the state's motions to dismiss have been denied. *Lewis v. Iowa*, No. LACV 037031 (Linn Co. D. Ct. July 21, 2000).

## II

A. The Eleventh Amendment Bars Suits Seeking to Intercept Future Payments to the States.

This case poses the question of whether Plaintiffs can escape the Eleventh Amendment bar blocking suits for money damages against the states by phrasing their requests for monetary relief as requests for future payments. We hold that they cannot.

Whether an action is barred by the Eleventh Amendment is a question of law, and is reviewed *de novo*. *Timmer v.*

a comprehensive scheme of enforcement precluded private enforcement).

Congress has amended the Medicaid Act to state that MSA funds are not considered recoupments under federal Medicaid law, but are the States' money to allocate as the States see fit. In May 1999, Congress amended 42 U.S.C. § 1396b(d) and instructed the Health Care Financing Administration (HFCA) that the settlement funds were not overpayments under the Medicaid laws and that HCFA was not entitled to share in the proceeds of the states' settlements. The amendment reads:

> (B)(i) Subparagraph (A) and paragraph 2(B) [requiring states to recoup overpayments and reimburse HCFA for the federal share] shall not apply to any amount recovered or paid to a State as part of the comprehensive settlement of November 1998 between manufacturers of tobacco products . . . and State Attorneys General . . . . (ii) Except as provided in subsection (i)(19)[referring to costs incurred in pursuing the lawsuits] a State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement, or a judgment, described in clause (i) *for any expenditures determined appropriate by the State.*

42 U.S.C. § 1396b(d)(3) (emphasis added).

By this amendment, Congress clarified that the states were to be able to allocate the monies received under the MSA as they "determined appropriate." The States certainly were not to be forced to allocate the money to Medicaid recipients who, having received treatment paid for by the government, now seek the monies intended for treating future patients. If the States wish to allocate all of the funds they receive under the MSA to future treatment of tobacco-related illness, under 42 U.S.C. § 1396b(d)(3) they may do so. This is a clear-cut Congressional statement that forecloses the existence of an implied private right of action, under 42 U.S.C. § 1983, seeking to divert the tobacco settlement money.

from doing so, Plaintiffs have no private cause of action under 42 U.S.C. § 1983.

The Sixth Circuit has previously found that 42 U.S.C. § 1983 creates an implied right of action under certain Medicaid Act statutes. For example, in *Boatman v. Hammons*, 164 F.3d 286 (6th Cir. 1998), the Sixth Circuit affirmed the grant of relief to § 1983 plaintiffs who complained that Michigan did not inform them of their right to transportation to and from Medicaid providers. The *Boatman* court held that the right to notice regarding transportation to Medicaid providers was not too ambiguous for § 1983 enforcement. *Boatman*, 164 F.3d at 289.

However, the Sixth Circuit has only recognized a private right of action to enforce Medicaid Act provisions when the putative plaintiffs were very clearly the intended beneficiaries of the law in question. *See, e.g.*, *Boatman*, 164 F.3d at 289; *Wood v. Tompkins*, 33 F.3d 600 (6th Cir. 1994). In the statutes at issue here, Medicaid recipients are an afterthought. These statutes were clearly meant to (1) require the States to seek recovery from third parties when reasonably possible, and (2) to require states to turn over a portion of the proceeds from such recoveries to the federal government. Medicaid recipients as a whole are entirely ancillary to this provision, and are simply the "residual bucket" in which any monies that were improperly received by the state would be deposited.

Even were we to determine that there is a valid, unambiguous and enforceable federal right granted to Plaintiffs by 42 U.S.C. § 1396k(b) and 42 C.F.R. § 433.154, we must also determine whether that right has been foreclosed by Congress. Congress may foreclose enforcement of a federal right either explicitly (by stating that § 1983 is not an available method of enforcement) or (as is much more commonly argued) by articulating such a comprehensive enforcement scheme that private enforcement is clearly contradictory to Congressional intent. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) (concluding that

*Michigan Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997). The Eleventh Amendment provides:

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the amendment does not address the possibility of suit against a state by one of its own citizens, unassailable case law has interpreted the amendment in such a way as to close that gap. *Hans v. Louisiana*, 134 U.S. 1 (1890). A state is sovereign within the structure of the federal system, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

States are, therefore, immune from private suit in both federal and state courts. There are three generally recognized exceptions to this rule. First, a state may consent to suit. *Alden v. Maine*, 527 U.S. 706 (1999). The States have not consented to this suit. Second, Congress may, pursuant to its powers under the Fourteenth Amendment, abrogate the state's immunity. *Seminole Tribe*, 517 U.S. at 72-73. Congress has provided in 42 U.S.C. § 1396b(d) a scheme for allowing the federal government to recoup its share of third-party recoveries (and expressly noted that this right does not apply to the tobacco settlement money), but has not made any provision, based on the Fourteenth Amendment, for suits against states by Medicaid recipients.

The third exception is the one at issue here. *Ex Parte Young*, 209 U.S. 123 (1908), holds that the Eleventh Amendment does not bar a federal court from issuing an injunction ordering prospective relief against a state official in order to prevent future constitutional violations. *Id.* at 159-60. However, it is "well established that even though a State

is not named as a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

"[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dept. of Treasury of the State of Indiana*, 323 U.S. 459, 464 (1945). Thus, "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds" is barred. *Edelman*, 415 U.S. at 663.

As a result, even though the formal requirements of *Ex Parte Young* may be met by naming officials (rather than the state) as defendants, and seeking injunctive relief, relief should not be granted if "the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

There is an exception to the exception, of course. If the injunctive relief sought by the plaintiff is truly prospective non-monetary relief, sovereign immunity will not bar the suit simply because the state may be required to make *incidental* expenditures in complying with the injunction. *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (federal courts are permitted to enjoin state officials to conform their conduct to requirements of federal law via injunction, notwithstanding a direct and substantial impact on the state treasury); *Edelman v. Jordan*, 415 U.S. 651 (1974) (suit was proper to the extent it sought "payment of state funds as a necessary consequence of compliance with a substantive federal-question determination"). The dividing line, therefore, is whether the money or the non-monetary injunction is the primary thrust of the suit.

facilitating federal recoupment of Medicaid costs, not providing a windfall to Plaintiffs, whose medical needs have been covered by the States.

The second step in a *Wilder* analysis is to determine whether the statute imposes a binding requirement on the States. *Wilder*, 496 U.S. at 512. It is clear that the Medicaid Act is binding on states once they have agreed to participate; this step is undisputed.

The third *Wilder* step requires that the rights sought to be enforced not be vague or amorphous. *Wilder*, 496 U.S. at 509-10. Supreme Court precedent dictates that the statutes here at issue do not create a sufficiently defined right for enforcement via an implied private right of action. In *Suter v. Artist M.*, 503 U.S. 347 (1991), the Supreme Court held that when a state is required to make "reasonable" efforts to reach a standard, the right is too ambiguous for enforcement by implied private right of action under 42 U.S.C. § 1983. *Id.* at 363-64. The Court noted: "we think that Congress did not intend to create a private remedy for the enforcement of the 'reasonable efforts' clause." *Id.* at 364. In the instant case, the States are required by federal statute to take "reasonable measures" to pursue responsible third parties. This is, in fact, what Plaintiffs claim the States were compelled to do. The center of their argument is that the States' claims *must* consist of Plaintiffs' assigned claims, because the States are compelled by federal law to pursue those claims.

What Plaintiffs fail to realize is that the States are only required to undertake "reasonable measures" in pursuing assigned claims (for which Plaintiffs could recover overage amounts), and that, under *Suter*, Plaintiffs have no private right of action to sue to enforce reasonable compliance with these federal statutes. If, as the States claim, bringing an action based on each individual assigned claim from a smoking case would be very complicated and time-consuming (in short, unreasonable), and the States have chosen to refrain

Court, in *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990), set forth the scheme for determining whether or not an implied private right of action under 42 U.S.C. § 1983 exists for enforcing Medicaid Act provisions. The general rule of *Wilder* is that a plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) the statute [does] not create enforceable rights, privileges or immunities within the meaning of § 1983 or (2) Congress has foreclosed such enforcement of the statute in the enactment itself. *Wilder*, 496 U.S. at 509-10.

The first inquiry (whether an enforceable federal right was created) requires a three-step analysis. First, courts ask whether the aspiring § 1983 plaintiff was the intended (or "especial") beneficiary of the statute. Second, the court seeks to determine "enforceability" by asking whether the statute created a binding obligation upon the state. Third, the right sought to be enforced may not be vague or amorphous. *Wilder*, 496 U.S. at 509-12.

42 U.S.C. § 1983 allows enforcement of federal rights, not federal law in general. The first step, therefore, in determining whether a private right of action exists under 42 U.S.C. § 1983 is to determine whether the federal statute at issue grants a right to the person seeking to enforce the cause of action. The relevant inquiry is whether the potential § 1983 plaintiff was the intended beneficiary of the statute.

The intended beneficiary of the Medicaid recoupment statutes is the federal government. The provisions require states to pursue remedies against responsible third parties, instead of relying on the federal government's assistance in paying citizens' medical bills. When a recovery against a responsible third party is made on an assigned claim, the federal government receives a share equal to its outlay. The "overage" provisions simply exist to prevent states from pocketing excess monies received, should they recover an amount in excess of their costs (which they are not, under the statute, allowed to do). The focus of the statute therefore is

Plaintiffs have couched their claim in prospective language: in essence, they seek an order forcing the States to turn over portions of future installments of the monies due under the States' settlement agreement with the tobacco manufacturers. Plaintiffs claim that these monies are not yet sufficiently the property of the States for such an order to be an order for monetary relief. Plaintiffs thereby hope to escape the Eleventh Amendment bar on suits for monetary relief against states.

Plaintiffs argue that their action is, in fact, merely one to force the States to comply with the federal distribution scheme for Medicaid recoupments, under 42 U.S.C. § 1396. They argue that each failure to turn over the money constitutes a future failure to comply with federal law. This, they say, was the root of the district court's error: Plaintiffs consider their demands to receive money in the future to be prospective relief. Plaintiffs assert that retroactive monetary relief must apply to a loss that they have already suffered. Plaintiffs argue that they have not yet suffered a loss, since they only claim future payments, rather than payments that have already been made to the state.

However, attempts to seize upon a state's "continuing income" by means of a prospective injunction have been held by the Supreme Court to be attempts to obtain compensation for an "accrued monetary liability." *Papasan*, 478 U.S. at 281. In *Papasan*, several Mississippi school districts sued state officials, claiming that those officials had breached trust obligations under federal law in managing school trust lands. *Id.* at 274. The districts sought compensation for their losses; they phrased their claim as one seeking an injunction forcing the state officials to meet their continuing federal obligations to fund the schools properly. The Supreme Court rejected this argument, determining that the claim served a purely compensatory purpose. *Id.* at 281. In the case at hand, Plaintiffs seek court orders requiring the States to hand over money. This does not make the relief sought nonmonetary or prospective. As the *Papasan* Court stated:

[C]ontinuing payment of the income from the lost corpus is essentially equivalent in economic terms to a one-time restoration of the lost corpus itself: It is in substance the award, as continuing income rather than as a lump sum, of an accrued monetary liability.

*Ibid.* (internal citations omitted). The attempt to seize on the settlement monies awarded to the States is an attempt to recover money damages and is barred by the Eleventh Amendment.

The case law does not support an argument that the requested relief has a purely "ancillary" effect on the States' treasuries. A court may enter a prospective injunction that costs the state money, but only if the monetary impact is ancillary, *i.e.*, not the primary purpose of the suit. *Edelman*, 415 U.S. at 668; *see also Quern v. Jordan*, 440 U.S. 332, 349 (1979) (enjoining a state to provide notice to recipients of welfare as to how to collect welfare benefits). For example, in *Milliken v. Bradley*, the Court enjoined a state to provide education programs in order to remedy racial discrimination; the expenditure of funds was ancillary to the non-compensatory goal. 433 U.S. at 289-90.

However, in *Kelley v. Metropolitan County Bd. of Educ.*, 836 F.2d 986 (6th Cir. 1987), the Sixth Circuit held that the relief sought, an order requiring the state to assume a percentage of the costs to a school of desegregating, was not ancillary. The court noted that when "[t]he order to pay is ancillary only to itself . . ." the Eleventh Amendment bar applies. *Id.* at 992. In the instant case, an order to pay out future amounts awarded to the States under the MSA would be "ancillary only to itself": there is no other purpose underlying the requested "injunctive" relief other than the recovery of cash that is the property of the state. It is therefore barred by the Eleventh Amendment.

Plaintiffs' reliance on the Tenth Circuit's decisions in *Elephant Butte Irrigation Dist. v. Dep't of the Interior*, 160

amount that Plaintiffs seek to recover (*i.e.*, any amount *beyond* the costs to the Medicaid program in treating their illnesses) as a matter of federal law *cannot* be a part of their claim, which they assigned to the States.

This point alone was sufficient for the Seventh Circuit to dismiss its Medicaid-recipient suit, *Floyd v. Thompson*, 227 F.3d 1029, 1035 (7th Cir. 2000). Judge Wood noted that the "plaintiffs' case hinges critically on the assumption that the MSA settled claims that originally belonged to them." *Id.* at 1035. Even if the States had sued on the assigned claims, rather than the States' own claims, "[i]f the only thing the individuals assigned was their rights to recover the amounts paid by the Medicaid program – not their right to recover any excess – then there is nothing left to distribute to them to which they could have any claim." *Id.* at 1036.

The States will receive more, under the MSA, than their costs for treating Plaintiffs' tobacco-related illnesses because they brought a variety of claims unrelated to recoupment of the costs of treatment. The States' lawsuits included, for example, counts alleging violation of consumer protection laws, misrepresentation and deceptive practices, deceptive practices in targeting youth, restraint of trade, unjust enrichment, and more. These claims have nothing to do with Plaintiffs, and are not "overage" from Plaintiffs' claims.

Moreover, the MSA itself does not mention or allocate funds paid for restitution of Medicaid expenses. On the contrary, the MSA states that the funds are paid "[i]n settlement of the Settling States' antitrust, consumer protection, common law negligence, statutory, common law and equitable claims for monetary, restitutionary, equitable and injunctive relief alleged by the Settling States." (MSA § XVIII(d)).

Plaintiffs' claims must also fail because the provisions of the Medicaid Act that they rely on do not create a private cause of action for violation of their terms. The Supreme

individual with respect to whom such assignment was executed (with appropriate reimbursement to the Federal Government to the extent of its participation in the financing of such medical assistance) and the remainder of such amount collected shall be paid to such individual.

42 U.S.C. § 1396k(b).  The C.F.R. section addressing this issue notes that the state's Medicaid agency must, when proceeding on assigned claims, "distribute collections as follows--(a) To itself, an amount equal to State Medicaid expenditures for the individual on whose right the collection was based. (b) To the Federal Government, the Federal Share of the State Medicaid expenditures . . . . (c) To the recipient, any remaining amount." 42 C.F.R. § 433.154.

Plaintiffs have sued under 42 U.S.C. § 1983, claiming a violation of rights created by federal law, *i.e.*, 42 U.S.C. § 1396k(b) and 42 C.F.R. § 433.154.  Plaintiffs claim that Kentucky and Tennessee were assignees of Plaintiffs' claims, once the States paid their medical bills.  Plaintiffs then suggest that the lawsuits brought by the States against the tobacco manufacturers were in fact suits to recover the money paid out by the state on Plaintiffs' claims.  And finally, Plaintiffs therefore suggest, they are entitled to the amount of money received by the states above the costs incurred by the states in paying for Plaintiffs' medical bills.

Even if the States had sued as assignees, the alleged "overage" amounts could not have come from Plaintiffs' assigned claims.   Under the assignment and third-party recovery provisions upon which Plaintiffs rely, the States are only assignees to the degree that they have paid out for services, and no more. 42 C.F.R. § 433.145(c) ("A State plan must provide that the assignment of rights to benefits obtained from an applicant or recipient is effective *only for services that are reimbursed by Medicaid*.").  Under the same federal law upon which Plaintiffs rely, it is clear that the States cannot be the assignees of more of Plaintiffs' claims than the amount paid for services.  Therefore, the precise

F.3d 602, 610 (10th Cir. 1998), and *Harris v. Owens*, 264 F.3d 1282 (10th Cir. 2001), on the issue of sovereign immunity is misplaced.  In *Elephant Butte*, a local water district sued the federal government and state officials claiming that the state violated federal law by retaining net profits under a recreational land lease with the federal government. The *Elephant Butte* court determined that relief would not be retrospective: the interference was not with a present entitlement but with a future possibility of earnings. *Elephant Butte,* 160 F.3d at 610. The difference between that case and this is obvious: the States here have a present and settled interest in payments that happen to be made in installments.   If the settlement were already paid over as a lump sum, Plaintiffs would clearly have no case: the States' established property interest would be unassailable. Plaintiffs recognize this when they assert that they are not claiming funds already paid to the States from escrow.   The States have a present financial interest in the payment of the settlement, even though that payment will occur in installments rather than a lump sum.

For similar reasons, therefore, Plaintiffs cannot rely on *Harris v. Owens*, 264 F.3d 1282 (10th Cir. 2001). In that case, the Tenth Circuit determined that the Eleventh Amendment did not bar a suit by a Medicaid recipient. *Id.* at 1297.  However, the court found that an amendment to the Medicaid Act did block the Medicaid-recipient suit (a discussion of which is found below). *Ibid.*

The *Harris* court disagreed with those courts "that have found it 'wholly irrelevant that payments [under the Master Settlement Agreement] will be made in fixed future installments rather than a lump sum.'" *Id.* at 1291.  Although the *Harris* court conceded that "[f]rom a purely economic perspective, it may be irrelevant that the settlement funds are to be paid over time rather than all at once; the future amount can be reduced to a present value," it concluded that for the purposes of the Eleventh Amendment, all that mattered was that such payments would be made in the future. *Id.* at 1291-

92. This argument is flawed. It ignores the difference between the possibility of future earnings, and a present entitlement to future payments. The two types of assets are valued quite differently. The difference between possible future earnings and present entitlement to future payment has been recognized as marking the line between prospective and retrospective relief. *Papasan*, 478 U.S. at 281.

There is a final layer of sovereign immunity analysis that also blocks Plaintiffs' suit. The Supreme Court in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997), noted that even prospective relief (in *Coeur d'Alene*, a declaratory judgment) would be barred if the relief sought is the functional equivalent of relief otherwise barred by the Eleventh Amendment and "special sovereignty interests" are implicated. *Id.* at 281. In *Coeur d'Alene*, the plaintiffs sought a declaratory judgment establishing their rights to certain lands. The Court found that the suit was a "functional equivalent of a quiet title action," which implicated "special sovereign interests." *Id.* at 281-82.

As appellees here point out, the Sixth Circuit noted in *Kelley* that the interest of a sovereign in allocating state funds is a "very serious" one. *Kelley*, 836 F.2d at 995. Although the analysis in *Kelley* was not expressly undertaken under the *Coeur d'Alene* analytical scheme, the point is a good one: an attempt to force the allocation of state funds implicates core sovereign interests. Congress has stated, in its legislation modifying the Medicaid Act in anticipation of the MSA, that the states are specifically allowed to allocate the MSA proceeds as they see fit. Pub. L. 106-31, § 3031 (amending 42 U.S.C. § 1396b(d)(3) (May 21, 1999) ("[A] State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement, or a judgment, described in clause (i) for any expenditures determined appropriate by the State."). Interference with the allocation of state funds, where Congress has expressly enacted that states may allocate such funds as they please, is an interference with a "special sovereign interest" under *Coeur d'Alene*.

Because Plaintiffs attempt to recover money damages from the States, their claims are barred by the Eleventh Amendment.

**B.   Plaintiffs Lack a Valid Claim.**

We need go no further. However, we note that even were Plaintiffs able to pass the Eleventh Amendment bar on suits for monetary damages against a state, Plaintiffs have not asserted a valid claim. First, Plaintiffs' characterization of the States' recovery as a subrogation action is incorrect. Second, Plaintiffs do not have a private right of action to enforce federal rights under 42 U.S.C. § 1983.

Federal law requires states or local administering agencies to take "all reasonable measures to ascertain the legal liability of third parties" for costs incurred under state Medicaid plans. 42 U.S.C. § 1396a(a)(25)(A). In cases where legal liability is found to exist for monies paid out under Medicaid plans, states are required to "seek reimbursement for such assistance to the extent of such legal liability. 42 U.S.C. § 1396(a)(25)(B). The purpose of this requirement is straightforward: when reasonably feasible, states are required to attempt to recover medical costs incurred under Medicaid programs from responsible third parties, rather than relying on federal aid exclusively. When a recovery is made, the federal government is paid its share. In order to facilitate recoupment of costs by the federal Medicaid system, state programs are also required to "provide for mandatory assignment [to the payor state] of rights of payment for medical support and other medical care owed to recipients . . . ." 42 U.S.C. §§ 1396a(a)(45).

If a state pursues an assigned claim, 42 U.S.C. § 1396k(b) provides a framework for distribution. The section provides:

Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an