[No. B140709. Second Dist., Div. One. Aug. 31, 2000.]

THE STATE OF CALIFORNIA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOUIS J. BOLDUC et al., Real Parties in Interest.

**COUNSEL**

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Dennis Eckhart, Assistant Attorney General, and William F. Soo Hoo, Deputy Attorney General, for Petitioners.

No appearance for Respondent.

Stephen H. Heller; Robert M. Tessier; Cheong, Denove, Rowell, Antablin & Bennett and John D. Rowell for Real Parties in Interest.

**OPINION**

**VOGEL, (Miriam A.), J.**—The State of California and others sued six tobacco companies and others to recover money paid by the State for the treatment of tobacco-related illnesses suffered by its Medi-Cal beneficiaries. In coordinated litigation involving most of the 50 states, the dispute was resolved by a $206 billion settlement, from which California will receive about $25 billion over the next 25 years. The ink on the settlement was barely dry when a group of Medi-Cal beneficiaries filed the lawsuit that is now before us to claim the "excess" money recovered by the State—that is, everything over and above the amounts necessary to reimburse the state and

federal governments for the money actually paid to the Medi-Cal beneficiaries' healthcare providers. We agree with the State that, as a matter of law, the beneficiaries are not entitled to the relief they seek.

## BACKGROUND

### The Tobacco Litigation

In 1997, the State of California sued several major tobacco companies and their organizations for injunctive relief and statutory civil penalties for alleged violations of the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.), the False Claims Act (Gov. Code, § 12651, subd. (a)(7)), and the Unfair Competition Act (Bus. & Prof. Code, § 17200 et seq.), and to recover the money spent by the State during the preceding three years to provide Medi-Cal benefits for smoking-related illnesses. (Welf. & Inst. Code, § 14124.71.)[1] The State's action tracked similar suits brought by other states (the Tobacco Litigation). In 1998, the Tobacco Litigation was settled for $206 billion, with 46 states and territories (including California) and six territories signing a Master Settlement Agreement (MSA) that obligates the tobacco companies to pay about $25 billion to the State of California over a period of 25 years.

### The Present Lawsuit

In 1999, Louis J. Bolduc (and others included in our references to Bolduc) sued the State of California (and others included in our references to the State) for declaratory and injunctive relief, an accounting, and imposition of a constructive trust. Bolduc alleges that he has received (and will in the future continue to receive) treatment for smoking-related illnesses and ailments, at least some of which has been and will be paid for in whole or in part by Medi-Cal.

Bolduc alleges, correctly, that the State is required to obtain from every Medi-Cal beneficiary an assignment of his right to recover past and future

---

[1] In California, medical care to qualified low-income and disabled patients is provided in cooperation with the federal government by Medi-Cal, the Aid and Medical Assistance Program (Welf. & Inst. Code, § 14000 et seq.; 42 U.S.C. § 1396 et seq.). Under Welfare and Institutions Code section 14124.71, when benefits are provided to a Medi-Cal beneficiary because of an injury for which another person is liable, the Director of the Department of Health Services has the right to recover from such person the reasonable value of the benefits provided. The statute provides that "[n]o action taken in behalf of the director pursuant to this section or any judgment rendered in such action shall be a bar to any action upon the claim or cause of action of the beneficiary [or his representative] against the third person who may be liable for the injury, or shall operate to deny to the beneficiary the recovery for that portion of any damages not covered hereunder. . . ."

medical benefits from any potentially liable third party. In California, this assignment is automatic. (Welf. & Inst. Code, § 14008.6 [as a condition of eligibility for Medi-Cal services, a beneficiary must assign to the state any rights he may have to medical support and to payments for medical care from a third party].)[2] Less accurately, Bolduc alleges that when the State, as assignee, succeeds in its effort to recoup Medi-Cal expenditures from a third party, the State must reimburse the federal government for its contribution, if any, then reimburse itself for its own contribution, and then pay any excess recovery to the beneficiary. (42 U.S.C. § 1396k(b).)[3] In this regard, Bolduc's complaint somewhat disingenuously fails to mention that, with regard to the Tobacco Litigation settlement proceeds, Congress has relinquished all of the federal government's claims to reimbursement. (42 U.S.C. § 1396b(d)(3)(B)(i) [the provisions that otherwise obligate the state to reimburse the federal program "shall not apply to any amount recovered or paid to a State as part of the comprehensive settlement" in the Tobacco Litigation].) He also fails to allege that, on its face, the State's complaint in the Tobacco Litigation asserted a direct statutory claim under Welfare and Institutions Code section 14124.71, not a claim derived by assignment or subrogation.

Bolduc alleges that the "[s]ettlement payments by the tobacco companies are, in substantial part, designed to reimburse California for tobacco related [Medi-Cal] costs, past and future"; that there will be money left over after the State reimburses itself; and that there is a "clear and unequivocal Congressional mandate . . . that [Medi-Cal] recipients who have assigned their past and future medical damage claims against third parties to a state are entitled to recover any [excess] settlement amounts received by a state from a third party." In spite of this clear mandate, says Bolduc, the State has said that Medi-Cal recipients with smoking-related illnesses "will receive nothing from the tobacco settlement . . . ." Based on these allegations, Bolduc wants a declaration that the State must pay over to him the "excess" settlement proceeds—that is, any amount not needed to reimburse the State for its actual expenditures for Bolduc's smoking-related medical treatment.

[2]The idea, obviously, is that the State is the payor of last resort. (*Sullivan v. County of Suffolk* (2d Cir. 1999) 174 F.3d 282, 285.) Thus, for example, when a Medi-Cal beneficiary is injured in an automobile accident caused by a third party's negligence, the statutory assignment permits the State to pursue the beneficiary's claim against the third party.

[3]Section 1396k(b) of title 42 of the United States Code provides: "Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual." As we will explain, the State's recovery in the Tobacco Litigation was *not* "under an assignment."

The State demurred, unsuccessfully, then petitioned for a writ of mandate. We issued an order to show cause.

## DISCUSSION

■ The factual predicate for Bolduc's lawsuit is that the Tobacco Litigation arose out of his assignment to the State of his rights against the tobacco companies. The State says that simply isn't so, and that its claim in the Tobacco Litigation was a direct statutory action under Welfare and Institutions Code section 14124.71.[4] We agree with the State (and therefore do not discuss the State's other attacks on Bolduc's action).

## A.

Section 14124.71 provides: "(a) When benefits are provided or will be provided to a [Medi-Cal] beneficiary under this chapter because of an injury for which another person is liable, or for which a carrier is liable in accordance with the provisions of any policy of insurance . . . , the director [of the Department of Health Services] shall have a right to recover from such person or carrier the reasonable value of benefits so provided. The Attorney General [or other specified persons] may, to enforce such right, institute and prosecute legal proceedings against the third person or carrier who may be liable for the injury in an appropriate court, either in the name of the director or in the name of the injured person . . . . [¶] (b) The director may: [¶] (1) Compromise, or settle and release any such claim, or [¶] (2) Waive any such claim, in whole or in part . . . . [¶] (c) No action taken in behalf of the director pursuant to this section or any judgment rendered in such action shall be a bar to any action upon the claim or cause of action of the beneficiary [or his representative] against the third person who may be liable for the injury, or shall operate to deny to the beneficiary the recovery for that portion of any damages not covered hereunder. . . ."[5]

Section 14124.71 "does not employ a subrogation scheme for recoupment of Medi-Cal benefits. Rather, it gives the department a direct right of action . . . for recovery of monies spent to treat indigent tort victims. The department's right is akin to that of [the Medi-Cal beneficiary's] creditor to recover payment for a debt [the beneficiary] incurred when, having received injuries for which the tortfeasor might be liable, he accepted treatment for which Medi-Cal paid. . . . Although the department's actual recovery of

---

[4]Undesignated section references are to the Welfare and Institutions Code.

[5]Subdivision (c) of section 14124.71, as quoted in the text, defeats Bolduc's assertion that the MSA released *his* claims against the tobacco companies. Moreover, the MSA itself shows that no such thing was attempted or accomplished.

payment for the debt is conditioned on the existence of a fund created from a judgment or settlement, the department's right to recover is independent of [the beneficiary's] right—not derivative therefrom." (*Wright v. Department of Benefit Payments* (1979) 90 Cal.App.3d 446, 452-453 [153 Cal.Rptr. 474] [rejecting a claim that the Department's rights under section 14124.71 were derivative and holding that, as a result, there was no basis to impute a beneficiary's negligence to the Department].)

### B.

To avoid the conclusion compelled by a plain reading of section 14124.71, Bolduc insists the Tobacco Litigation arose out of a subrogation claim. This is his syllogism: First, he says, "the scope of the automatic assignment which occurred by operation of federal law included [his] medical claims," which means "[t]he State possessed those claims by operation of law when it settled with the tobacco companies . . . ." Second, he says, section 14124.71 "includes the assigned claims held by the Director for future medical expenses of the indigent smokers." Third, he concludes, "the State settled the assigned claims for medical expenses, past and future, regardless of what the State did or did not allege in its complaint against the tobacco companies." There are several problems with this analysis, any of which alone would defeat Bolduc's claims.

### 1.

As explained above, section 14124.71 gives the Director of the Department of Health Services a direct cause of action against a third party who is liable for a Medi-Cal beneficiary's injury or illness, a right that is not derivative or dependent upon any right the beneficiary might have. (*Wright v. Department of Benefit Payments, supra,* 90 Cal.App.3d at pp. 452-453.) The director's right under section 14124.71 is to recover from a responsible third person only "the reasonable value of benefits" provided. On the other hand, the statutory assignment created by subdivision (a) of section 14008.6 gives the director a much greater right—to recover from a responsible third party the full amount of the beneficiary's "rights to medical support and to payments for medical care from a third party that [the beneficiary] may have in his or her own behalf or in behalf of any other family member for whom [the beneficiary] has the legal authority to assign such rights . . . ."

Further support for the plain distinction between a direct action and an action on an assignment can be found in the statute that creates the direct action and in those that follow it. At the same time subdivision (a) of section 14124.71 gives the director a direct cause of action, subdivision (c) of that

statute preserves for the beneficiary the right to bring his own action by providing that no action taken by the director "pursuant to this section . . . shall be a bar to any action [by] the beneficiary [or his representative] against the third person." The distinction between the director's direct action and an action on the beneficiary's statutory assignment is recognized in subdivision (a) of section 14124.72, which establishes a period of limitations for the director's action that stands or falls independent of the nature of the beneficiary's claim or the period of limitations governing the beneficiary's claim against the third party. (See *Royal Bank Export Finance Co. v. Bestways Distributing Co.* (1991) 229 Cal.App.3d 764, 768 [280 Cal.Rptr. 355] [an assignee steps into the shoes of his assignor, and a third party may assert against the assignee any defenses that would have been viable against the assignor]; *Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610, 622 [39 Cal.Rptr.2d 159].) Similarly, subdivision (b) of section 14124.72 provides for the continuation of the director's action, without further action, upon the death of the beneficiary. (See *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1523-1524 [37 Cal.Rptr.2d 810] [unless certain procedures are followed, a personal injury action may be subject to a plea in abatement upon the death of the injured party].)

In our view, these provisions defeat Bolduc's assertion that a direct action under section 14124.71 necessarily "includes the assigned claims held by the Director for future medical expenses of the indigent smokers."

## 2.

The State's pleading in the Tobacco Litigation shows that it was a direct action brought pursuant to section 14124.71, not an action on the statutory assignments given by the State's Medi-Cal beneficiaries.[6] The cause of action was labeled as a claim for the "recovery of Medi-Cal expenditures" brought pursuant to section 14124.71. The statute was alleged in *haec verba,* and the amount sought was the "reasonable value" of the benefits provided, not the greater amounts the beneficiaries and the State would arguably have been entitled to recover had the State sued on the assignments. We flatly reject Bolduc's contention that, "regardless of what the State did or did not allege in its complaint against the tobacco companies," his claims were included in the settlement of the Tobacco Litigation. We flatly reject his assertion that, absent an assignment from a Medi-Cal beneficiary, the State

---

[6]At the State's request, we have judicially noticed its first amended complaint and the MSA in *People v. Philip Morris, Inc.,* San Diego County Superior Court case No. JCCP4041 [*People v. Philip Morris, Inc.* (Super. Ct. Sac. County, 1997, No. 97AS03031)). (Code Civ. Proc., § 430.30, subd. (a); *Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1379 [10 Cal.Rptr.2d 1].)

has no legal right to pursue a third party, an argument that simply ignores the limited scope of a beneficiary's assignment—which gives the State nothing more than the right to recover, dollar for dollar, that which has been and will be paid on the beneficiary's behalf. (42 U.S.C. §§ 1396a(a)(25)(B), 1396k(a); 42 C.F.R. § 433.145(a)(1), (c).) If that had been the scope of the Tobacco Litigation and the MSA, there would be nothing left over for Bolduc.[7]

3.

Bolduc claims his interpretation of the Medi-Cal statute is the only way to satisfy the federal requirements. His analysis is flawed.

It is true, as Bolduc contends, that a state will be reimbursed for its Medicaid expenses only if the state's medical assistance program meets federal requirements. (42 U.S.C. § 1396 et seq.) It is also true, as Bolduc claims, that a state's plan must provide for the mandatory assignment of the beneficiary's rights against third parties and must obligate the state's Medicaid administrator to "take all reasonable measures to ascertain the legal liability of third parties." (42 U.S.C. § 1396a(a)(25)(A), (a)(45); see *Morris v. Williams* (1967) 67 Cal.2d 733, 738 [63 Cal.Rptr. 689, 433 P.2d 697] [our Medi-Cal statute was adopted to qualify for federal funding].) It does not follow, however, that a subrogation action is the only way to satisfy the federal requirements. ▬ ██ ██ To the contrary, at least three other states do precisely what California does—they give the director of the department charged with the administration of their Medicaid programs the right to pursue a subrogation action on the beneficiary's assignment *and* the right to pursue a direct action. (E.g., *Agency for Health Care v. Assoc. Indus.* (Fla. 1996) 678 So.2d 1239, 1248-1250; *State of Texas v. American Tobacco Co.* (E.D.Tex. 1997) 14 F.Supp.2d 956, 964-965; *Hedgebeth v. Medford* (1977) 74 N.J. 360 [378 A.2d 226, 228]; and see *United States v. Merrigan* (3d Cir. 1968) 389 F.2d 21, 24 [construing similar language in a similar statute and holding that, because "the grant of an equitable remedy of subrogation is not from its nature a limitation on a right of action," it is clear that "Congress did not intend to limit the primary right of recovery in specifying the right of subrogation in aid of it"]; and see *Tyler v. Douglas*

---

[7]Although the record is not altogether clear, it appears with reasonable certainty that, at the time the Tobacco Litigation was settled and the MSA signed, the State's claim to recover Medi-Cal benefits paid for smoking-related illness was no longer a part of the State's complaint. In May 1998, a demurrer to that cause of action was sustained. In December, about three weeks after the Tobacco Litigation was settled, the Court of Appeal, Third Appellate District, dismissed the State's petition for a writ of mandate. As a result, there was no Medi-Cal cost recovery action—whether direct or by way of assignment—pending at the time of the settlement.

(D.Vt. 2000) 2000 WL 1146575; *State v. American Tobacco Co., Inc.* (Wash.Super.Ct. 1996) 1996 WL 931316.)[8]

It adds nothing to say, as does Bolduc, that the federal government is in other circumstances entitled to recover the money it has contributed for the care of California's Medi-Cal beneficiaries. With regard to the Tobacco Litigation settlement proceeds, Congress expressly prohibited *any* recoupment by the federal Medicaid administration. (42 U.S.C. § 1396b(d)(3)(B)(i) [the provisions that otherwise obligate the state to reimburse the federal Medicaid program "shall not apply to any amount recovered or paid to a State as part of the comprehensive settlement" in the Tobacco Litigation].) ▮▮▮▮ Indeed, California and the other settling states are authorized by the same statute to use those monies "for any expenditures determined appropriate by the State." (42 U.S.C. § 1396b(d)(3)(B)(ii).)[9]

Had the states been limited to subrogation actions, they could not have pursued the claims that led to the settlement in the Tobacco Litigation— because (among other problems) the states would have had to prove causation *and* confront the tobacco companies' claims of assumption of the risk and comparative fault. As Professors Jacobson and Warner explained in *Litigation and Public Health Policy Making: The Case of Tobacco Control* (Aug. 1999) 24 Journal of Health Politics, Policy and Law 769, 777, the states "were not suing on behalf of injured smokers through subrogation. In essence, the [Tobacco L]itigation was designed to circumvent the freedom-of-choice and individual-rights strategies that tobacco attorneys had used to win previous litigation. In the [Tobacco L]itigation, claims were aggregated at the State level to avoid the blameworthiness problems faced by individual litigants and the need to show individual causation. Consistent with the underlying theory of the case, the State attorneys general attempted to prove

---

[8]As Professors Daynard and Kelder put it in *The Role of Litigation in the Effective Control of the Sale and Use of Tobacco* (Winter 1997) 8 Stan. L. & Pol'y Rev. 63, 83, footnote 329: "Although the Medicaid Law [codified] the State's right to be subrogated, this right is in addition to, and not in derogation of, the State's statutory and common law remedies. There is no language in the Medicaid Law that implies an exclusive remedy, and well-settled rules of statutory interpretation require a construction that the Medicaid Law expanded, not contracted, the State's remedies."

[9]Title 42 United States Code section 1396k(b), quoted in footnote 3, *ante*, does not apply to this kind of claim. It applies when a state seeks reimbursement for medical expenses incurred for a minor Medicaid beneficiary whose medical needs are supposed to be paid by a noncustodial parent. It provides for reimbursement of any "excess" to the beneficiary because it addresses a situation where the noncustodial parent might be ordered to pay the state for more than the child's medical expenses (e.g., general support). (H.R.Rep. No. 95-673, 1st Sess., p. 45 (1977), 1977 U.S. Code Cong. & Admin. News, p. 3119; *Perry v. Dowling* (2d Cir. 1996) 95 F.3d 231, 237-238.)

their case based on epidemiological studies of the population-based harms caused by tobacco, not by harms to specific individuals. Since the State had no choice but to absorb the Medicaid costs of tobacco-related diseases, and it is the taxpayers, not smokers, who are injured financially, the States argued that the traditional industry defenses raised in individual litigation are irrelevant. . . ." (See also Daynard & Kelder, *The Role of Litigation in the Effective Control of the Sale and Use of Tobacco, supra,* 8 Stan. L. & Pol'y Rev., pp. 82-83; and see *State v. Philip Morris, Inc.* (1998) 179 Misc.2d 435 [686 N.Y.S.2d 564, 567].)[10]

## C.

This lawsuit was not Bolduc's idea. It has been tried before, unsuccessfully, in at least three states, Minnesota, Wisconsin and Tennessee, and in Northern California. Minnesota has a Medical Assistance Program substantively indistinguishable from California's Medi-Cal statute, with provisions for both subrogation claims and direct actions. (Minn. Stat. §§ 256B.042, 256D.03, subd. 8.) In the case that served as the obvious blueprint for Bolduc's action here, the Minnesota court explained that Minnesota's claim in the Tobacco Litigation was a "direct action against the tobacco companies," then characterized the Medicaid beneficiaries' claims as "tortured." (*Brown v. Minnesota* (County of Hennepin, Case No. 98-11152, Dec. 15, 1998), Order Granting Defendant's Motion to Dismiss.) In Wisconsin, in Tennessee, and in Northern California federal district courts, similar suits were disposed of on other grounds. (*Floyd v. Thompson* (W.D.Wis. 1999) 111 F.Supp.2d 1097; *Barton v. Summers* (M.D.Tenn. 2000) 111 F.Supp.2d 989; *Forces Action Project LLC v. State of California* (N.D.Cal., Jan. 5, 2000,

---

[10]These considerations show the practical problems with Bolduc's claim and also lead to the inevitable question, to which Bolduc offers no answer: Since the settlement is intended to cover the State's past and future expenditures for smoking-related illnesses suffered by Medi-Cal beneficiaries, what makes Bolduc think there will be any "excess" recovery? Of course, there is also the problem of Bolduc's uncertainty about the nature of the recovery he had hoped to make in this case. In his complaint, he alleged that his personal injury claims against the tobacco companies were appropriated by the State and covered by the MSA, an argument he advanced, we assume, to justify his demand to share in the proceeds. Now, in his opposition to the State's petition, he concedes "that any claim[s] for general damages or wage loss claims (*i.e.,* non-assigned claims) an indigent smoker may have against the tobacco companies are not adversely impacted by the MSA, and no recovery may be had in this action for those items of damage." He concedes, as well, that "[o]nly the assigned claims are at issue in this lawsuit," and that he is "not attempting to graft such a personal injury claim onto [his] federal rights." What, then, is he after? If the entirety of the State's recovery under the MSA constitutes reimbursement for past and future expenses paid on behalf of Bolduc and the State's other indigent smokers, there would be no excess. Fortunately, our resolution of this petition in favor of the State makes it unnecessary to answer these questions.

No. C99-0607), Order Granting Defendants' Motion to Dismiss, 2000 WL 20977.)[11]

We cannot fathom any other result, and conclude for the reasons stated that Bolduc cannot state a claim against the State. It follows that the State's demurrer must be sustained without leave to amend, and a judgment entered accordingly.

### DISPOSITION

The petition is granted, and a writ of mandate shall issue to compel the trial court (1) to vacate its order overruling the State's demurrer, (2) to enter a new order sustaining the demurrer without leave to amend, and (3) to enter a final declaratory judgment in favor of the State. The State is awarded its costs incurred in these writ proceedings.

Spencer, P. J., and Ortega, J., concurred.

On September 13, 2000, the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied November 15, 2000. Brown, J., was of the opinion that the petition should be granted.

---

[11]At the State's request, we have judicially noticed these orders and unpublished opinions to show that this is a copycat lawsuit. We do not cite them as precedent for our holding. (Evid. Code, § 452, subd. (d); Code Civ. Proc., § 430.30, subd. (a); *Four Star Electric, Inc. v. F & H Construction, supra,* 7 Cal.App.4th at p. 1379.)