Eva Lopes, coadministratrix,[1] & others[2] *vs.* Commonwealth.

Suffolk. March 5, 2004. - July 9, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Medicaid. Executor and Administrator,* Claims against estate, Governmental claims. *Tobacco. Governmental Immunity. Subrogation.*

In a civil action brought by the personal representatives of the estates of several Massachusetts residents who received free medical care during their lives under the Commonwealth's Medicaid program, G. L. c. 118E, §§ 15 et seq., for declaratory and injunctive relief to prevent the Commonwealth from proceeding under its estate recovery program against the estates of persons who had died or who will die of tobacco-related illnesses, and to recover funds collected under the Commonwealth's estate recovery program from the estates of those who had died of tobacco-related illnesses, principles of sovereign immunity barred most of the plaintiffs' claims, in that the Legislature did not authorize a suit against the Commonwealth to recoup money that allegedly had been wrongfully recovered under the estate recovery program [175-176]; moreover, the Commonwealth did not implicitly waive sovereign immunity by pursuing the manufacturers of tobacco products under its statutory authority to sue liable third parties, because the Commonwealth proceeded against the manufacturers in a direct cause of action rather than as subrogee of Medicaid beneficiaries [176-178]; further, Congress did not abrogate the Commonwealth's sovereign immunity for purposes of such an action [178], the plaintiffs' action was not one in contract and did not arise in a contractual setting so as to render sovereign immunity inapplicable [178-179], no Federal constitutional issue was present in the action [179-180], and the relief that the plaintiffs sought would produce a violation of Federal law [180]; however, principles of sovereign immunity did not bar the plaintiffs' claim seeking a judgment declaring that they are entitled to raise the defense of a setoff of a portion of tobacco litigation settlement funds against the benefits received for tobacco-related illnesses, which would reduce the liability of the plaintiffs' decedents' estates with regard to any claims made by the Commonwealth [180-181].

[1] Of the estate of Mary R. Watkins.

[2] Dorothy Duarte, coadministratrix of the estate of Mary R. Watkins; Patricia J. Hennessey, administratrix of the estate of Robert K. Gallerani; George Rego, administrator of the estate of Anna Jane Rego; Suzanne M. King, executrix of the estate of Hazel T. LeGere; Helen Schissler, executrix of the estate of Alice A. Martel; and Robert A. Martin, executor of the estate of Helen A. Martin.

In a civil action brought by the personal representatives of the estates of several Massachusetts residents who received free medical care during their lives under the Commonwealth's Medicaid program, G. L. c. 118E, §§ 15 et seq., for a judgment declaring that they are entitled to raise the defense of a setoff of a portion of tobacco litigation settlement funds against the benefits received for tobacco-related illnesses in any claim brought against the estates by the Commonwealth, the plaintiffs failed to state a claim upon which relief could be granted, in that the plain language of the Medicaid Act, 42 U.S.C. § 1396(d)(3)(B)(ii), precludes any claim against the Commonwealth for any amount received by the Commonwealth under an agreement settling a lawsuit against the manufacturers of tobacco products, including a claim of setoff in a proceeding under the Commonwealth's estate recovery program [181-184]; moreover, the plaintiffs' failure to state a claim under the Medicaid Act defeated their claims under the Federal and State civil rights acts [184].

CIVIL ACTION commenced in the Superior Court Department on March 23, 2001.

A motion to dismiss was heard by *Allan van Gestel,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Albert L. Farrah, Jr.,* for the plaintiffs.

*William W. Porter,* Assistant Attorney General, for the Commonwealth.

SPINA, J. The plaintiffs are personal representatives of the estates of Massachusetts residents who received free medical care during their lives under the Commonwealth's Medicaid program, G. L. c. 118E, §§ 15 et seq. In this action, the plaintiffs seek to enjoin the Commonwealth from recovering the cost of that care from their decedents' estates or, where the money has already been recovered, to require the Commonwealth to return the funds. The plaintiffs base their claim on the premise that their decedents received such care for tobacco-related illnesses, and the Commonwealth already has recovered the cost of that care from settlement of its litigation against various manufacturers of tobacco products. The plaintiffs argue that recovery from the decedents' estates would amount to double recovery and unjust enrichment, as well as violation of various State and Federal statutory and constitutional provisions. The Commonwealth filed a motion to dismiss the complaint under Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass.

754 (1974), on grounds of (1) sovereign immunity; (2) waiver as to amounts already recovered, where there had been no objection to recovery within the time provided in G. L. c. 118E, § 32; and (3) failure to state a claim for relief under (a) common-law principles of unjust enrichment, (b) G. L. c. 118E, §§ 15 et seq., (c) the equal protection clause of the United States Constitution, or (d) the Federal and State civil right acts. A judge in the Superior Court determined that the plaintiffs' claims were barred by sovereign immunity and ordered the complaint dismissed. The plaintiffs appealed, and we transferred the case here on our own motion. We affirm the judgment, but for reasons based on the plaintiffs' failure to state a claim, as well as sovereign immunity.

1. *Background.* We summarize the facts set forth in the complaint.[3]

Medicaid, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (2000), is a Federal program in which participating States are reimbursed payment of medical services made on behalf of eligible low-income individuals. Massachusetts is a participating State. See G. L. c. 118E, § 15. As a condition of Federal reimbursement, participating States are required to institute and operate an estate recovery program designed to recover from the estates of certain Medicaid recipients the costs of certain nursing facility and other long-term care services paid on their behalf. See 42 U.S.C. §§ 1396a(a)(18), 1396p(a), (b); G. L. c. 118E, §§ 31 et seq.

Participating States also are required to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the [State's Medicaid] plan." 42 U.S.C. § 1396a(a)(25)(A). Participating States must seek reimbursement from liable third parties where the State can reasonably expect to recover an amount greater than the cost of pursuing such recovery. See 42 U.S.C. § 1396a(a)(25)(B); G. L.

---

[3]"In reviewing a dismissal under [Mass. R. Civ. P. 12 (b) (1) or (6), 365 Mass. 754 (1974)], we accept the factual allegations in the plaintiffs' complaint, as well as any favorable inferences reasonably drawn from them, as true." *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998), citing *Nader* v. *Cintron*, 372 Mass. 96, 98 (1977).

c. 118E, § 22. The Federal government and participating States share the net amount of Medicaid payments recovered from third parties. See 42 U.S.C. § 1396b(d)(3)(A). A State's Medicaid plan must require recipients to assign to the State their right to recover payment for medical care from any liable third party, and to cooperate with the State in pursuing recovery from any liable third party. See 42 U.S.C. § 1396a(a)(25)(A), (B).

Consistent with the Commonwealth's obligation to pursue reimbursement from liable third persons, the Attorney General brought a direct action[4] in 1995 in the name of the Commonwealth (including the division of medical assistance) against various manufacturers of tobacco products. The amended complaint, captioned Commonwealth of Massachusetts *vs.* Philip Morris Inc., Middlesex Superior Court No. 95-7378, sought equitable relief to enjoin the manufacturers of tobacco products from engaging in certain unfair or deceptive acts and practices in trade or commerce, including deceptive advertising of tobacco products, and to require them to disclose their internal research on smoking, health, and addiction, and machine-tested nicotine yields of their products. The amended complaint also sought monetary damages arising out of the adverse health consequences of cigarette smoking, including (1) restitution for health care expenses incurred under the Medicaid program, (2) funding for a "corrective public education campaign" related to smoking, health, and addiction, and (3) funding for "smoking cessation programs." Finally, the amended complaint also sought damages, civil penalties, attorney's fees and costs under the Consumer Protection Act, G. L. c. 93A, §§ 2 (*a*), 4, and 9, for deceptive advertising of tobacco products, the systematic suppression and concealment of material information about the consequences of cigarette smoking, and other unfair or deceptive acts or practices in trade or commerce.

The Commonwealth's claims against the manufacturers of tobacco products were based on common-law theories of fraud, misrepresentation, breach of warranty, public nuisance, con-

---

[4]The Commonwealth also had authority to proceed as subrogee of Medicaid beneficiaries with respect to the cost of medical assistance provided under Medicaid. See notes 6 and 7, *infra.* It did not sue as subrogee.

spiracy, and undertaking of special duty; G. L. c. 93A, §§ 4[5] and 9; G. L. c. 118E, § 22[6]; and St. 1994, c. 60, § 276.[7] A judge in the Superior Court dismissed the common-law counts to the extent that they purported to state claims independent of the statutory claims.

In 1998, the Commonwealth's lawsuit against the manufacturers of tobacco products was settled as part of a nationwide settlement of similar claims by all fifty States, the District of Columbia, and five territories. Four States entered into individual settlement agreements with the manufacturers of tobacco products. The others, including Massachusetts, entered into a master settlement agreement. Under the terms of the master settlement agreement the manufacturers of tobacco products, without admitting liability or wrongdoing, agreed to pay the States approximately $240 billion over twenty-five years, plus $8.3 billion annually thereafter, in perpetuity. The Commonwealth had received $300 million as of the filing of the plaintiffs' complaint. It expects to receive approximately $8

---

[5]General Laws c. 93A, § 4, states in relevant part: "Whenever the attorney general has reason to believe that any person is using or is about to use any method, act, or practice declared by [§ 2] to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the commonwealth against such person to restrain . . . the use of such method, act or practice."

[6]General Laws c. 118E, § 22, states in relevant part: "The commonwealth shall be *subrogated* to a [Medicaid recipient's] entire cause of action or right to proceed against any third party and to a [Medicaid recipient's] claim for monies to the extent of assistance provided under . . . [c. 118E]. The commonwealth shall also have a *separate and independent cause of action* to recover, from any third party, assistance provided to a [Medicaid recipient] under said chapter[], which cause of action shall be in addition to other causes of action" (emphasis added).

[7]Statute 1994, c. 60, § 276, states, in relevant part: "The Attorney General is hereby authorized to bring an action on behalf of the division of medical assistance against any liable third party who is a manufacturer of cigarettes to recover the full amount of medical assistance provided by the Commonwealth under [G. L. c. 118E], and . . . is *automatically subrogated* to any rights that an applicant, recipient, or legal representative has to any third party benefit for the full amount of medical assistance provided under [G. L. c. 118E]. The division of medical assistance has a cause of action against a liable third party manufacturer of cigarettes to recover the full amount of medical assistance provided by the Commonwealth under [G. L. c. 118E], *and such cause of action is independent of any rights or causes of action of the recipient*" (emphasis added).

billion over twenty-five years, and it further expects to receive $300 million annually thereafter, in perpetuity. None of the payments under the master settlement agreement is earmarked for any particular purpose or tied to any particular claim or type of claim.

The Commonwealth has sought, and in certain cases already has received, reimbursement from the estates of the plaintiffs' decedents for medical and hospital care made in connection with the decedents' alleged tobacco-related illnesses, under the Commonwealth's estate recovery program, G. L. c. 118E, § 31. The plaintiffs allege that because the Commonwealth already has recovered, and will recover, monies from the tobacco product manufacturers for Medicaid payments made on behalf of their decedents and persons similarly situated,[8] there is no basis for seeking what amounts to a double recovery under the estate recovery program for the same payments. They seek declaratory and injunctive relief to prevent the Commonwealth from proceeding under its estate recovery program against the estates of persons who have died or will die of tobacco-related illnesses. They also seek a judgment against the Commonwealth to recover funds collected under its estate recovery program from the estates of persons who have died of tobacco-related illnesses.

2. *Sovereign immunity.* The Commonwealth contends that all the plaintiffs' claims are barred by principles of sovereign immunity. The plaintiffs claim that sovereign immunity is not a defense because the Commonwealth recovered the monies in the tobacco litigation while acting in its capacity as subrogee of the plaintiffs' decedents or, alternatively, that sovereign immunity does not apply to actions in contract or to claims raised in a contractual setting.

Sovereign immunity bars a private action against a State in its own courts absent consent by the Legislature or abrogation of sovereignty by Congress acting under its Fourteenth Amendment powers. See *Alden* v. *Maine*, 527 U.S. 706, 745, 754-756 (1999); *Woodbridge* v. *Worcester State Hosp.*, 384 Mass. 38, 42 (1981). "Consent to suit must be expressed by the terms of a

---

[8]The plaintiffs brought their action as a class action, but no class has been certified.

statute, or appear by necessary implication from them." *Id.* "[W]hen that consent is granted, [the Commonwealth] can be impleaded only in the manner and to the extent expressed in the statute." *Glickman* v. *Commonwealth*, 244 Mass. 148, 149 (1923).

The Legislature has not authorized a suit against the Commonwealth to recoup money that allegedly has been wrongfully recovered under the estate recovery program, G. L. c. 118E, § 31. The plaintiffs' only remedy under the estate recovery program is found in G. L. c. 118E, § 32, which provides a procedure by which an executor or administrator may disallow a claim by the Commonwealth, or assert the existence of "circumstances and conditions where the division [either] is required to defer recovery under [§ ] 31 . . . or . . . will waive recovery for undue hardship under its regulations." G. L. c. 118E, § 32 (*d*). If the Commonwealth (division) receives notice of disallowance, it must commence action to enforce its claim within sixty days of receipt of such notice. See G. L. c. 118E, § 32 (*f*). That the statute provides an express form of relief from sovereign immunity is an indication that the Legislature did not intend to waive immunity as to other forms of relief. See *Broadhurst* v. *Director of the Div. of Employment Sec.*, 373 Mass. 720, 727 (1977); *General Elec. Co.* v. *Commonwealth*, 329 Mass. 661, 664 (1953). The Legislature has not expressly consented to a direct action against the Commonwealth.

The plaintiffs suggest that waiver of sovereign immunity is implicit in the Commonwealth's pursuit of the manufacturers of tobacco products under its statutory authority to sue liable third parties as subrogee of Medicaid beneficiaries. 42 U.S.C. § 1396a(a)(25)(A). G. L. c. 118E, § 22. This argument fails because the Commonwealth did not proceed against the manufacturers of tobacco products as subrogee of Medicaid beneficiaries. It proceeded against them under its own "separate and independent cause of action" created by G. L. c. 118E, § 22, and St. 1994, c. 60, § 276. The Commonwealth's amended complaint against the manufacturers of tobacco products expressly alleges this authority. By pursuing its direct cause of action, the Commonwealth hoped to avoid both the

need to prove individual causation and the defense of contributory negligence. As one commentator stated: "[T]he [tobacco] litigation was designed to circumvent the freedom-of-choice and individual-rights strategies that tobacco attorneys had used to win previous litigation. In the [tobacco] litigation, claims were aggregated at the [S]tate level to avoid the blameworthiness problems faced by individual litigants and the need to show individual causation. Consistent with the underlying theory of the case, the [S]tate [A]ttorneys [G]eneral attempted to prove their case based on epidemiological studies of the population-based harms caused by tobacco, not by harms to specific individuals. Since the [S]tate has no choice but to absorb the Medicaid costs of tobacco-related diseases, and it is the taxpayers, not smokers, who are injured financially, the [S]tates argued that the traditional industry defenses raised in individual litigation are irrelevant" (citation omitted). Jacobson, Litigation and Public Health Policy Making: The Case of Tobacco Control, 24 J. Health Pol., Pol'y & L. 769, 777 (1999).

The terms of the master settlement agreement support the maintenance of the tobacco litigation by the States as a direct action rather than a subrogation action. Contrary to the plaintiffs' contention, the master settlement agreement preserves the right of smokers to bring their own actions against the manufacturers of tobacco products. The master settlement agreement does not release any claims that Medicaid recipients or their estates may have against the tobacco companies. Nor does it release the Commonwealth's claims under the estate recovery program, but it expressly preserves the Commonwealth's rights to pursue parties whose claims have not been released. Such parties include Medicaid recipients. Moreover, the relief sought in the Commonwealth's tobacco litigation extended well beyond the scope of a subrogation action, and the amounts payable under the master settlement agreement are not earmarked for any particular purpose or tied to any particular claim. See *Barton* v. *Summers*, 293 F.3d 944, 953 (6th Cir. 2002). There is no feasible way to identify what portion, if any, of the master settlement agreement might correspond to the Commonwealth's claim for reimbursement of Medicaid beneficiaries' health care expenses attributable to tobacco-related illnesses. See *Floyd* v.

*Thompson*, 227 F.3d 1029, 1038 (7th Cir. 2000) ("nightmarish" administrative problem to identify Medicaid portion of master settlement proceeds). Other courts have rejected attempts by Medicaid recipients to characterize a State's direct action against manufacturers of tobacco products as a subrogation action. See *Barton* v. *Summers, supra* at 951; *Watson* v. *State*, 261 F.3d 436, 444 (5th Cir. 2001); *State* v. *Superior Court*, 83 Cal. App. 4th 597, 602-606 (2000); *Brown* v. *State*, 617 N.W.2d 421, 425 (Minn. Ct. App. 2000), cert. denied, 532 U.S. 995 (2001). But see *In re Estate of Raduazo*, 148 N.H. 687, 692-694 (2002), cert. denied, 539 U.S. 942 (2003). We conclude that the Legislature did not expressly or implicitly consent to a direct action by the plaintiffs.

Congress has not abrogated the Commonwealth's sovereign immunity for purposes of this action. Neither Federal statute relied on by the plaintiffs — the Medicaid Act or the civil rights statute, 42 U.S.C. § 1983 — abrogates the States' sovereign immunity. See *Florida Dep't of Health & Rehabilitative Servs.* v. *Florida Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (Medicaid Act does not abrogate States' immunity); *Quern* v. *Jordan*, 440 U.S. 332, 342 (1979) (§ 1983 does not abrogate States' immunity).

The plaintiffs make the alternative argument that sovereign immunity is not applicable because their claim is based in contract. See *Mintor Constr. Corp.* v. *Commonwealth*, 397 Mass. 879 (1986); *Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28, 30 (1890). Although Medicaid recipients must execute and deliver a written "assignment" of rights in favor of the participating State whenever benefits are received for an injury caused by a third party, see 42 U.S.C. § 1396k(a)(1)(A); 42 C.F.R. §§ 433.145, 433.146 (2003); 130 Code Mass. Regs. §§ 503.006, 517.011 (1999), the Superior Court judge correctly concluded that the plaintiffs' suit was not an action in contract because the Commonwealth was "only doing what the law requires." "[A] contractual claim does not arise under a statute unless the Legislature has explicitly expressed the intent to waive sovereign immunity and create a contractual remedy." *Hollstein* v. *Contributory Retirement Appeal Bd.*, 47 Mass. App. Ct. 109, 114 (1999), citing *Milton* v. *Commonwealth*, 416 Mass.

471, 475 (1993). See *Robinson* v. *Teachers' Retirement Bd.*, 414 Mass. 340, 342 (1993) (statutory retirement benefits not contractual); *Broadhurst* v. *Director of the Div. of Employment Sec.*, *supra* at 727 (waiver of sovereign immunity to contract claims not applicable to claim for statutory unemployment benefits). In addition, the written assignment arises under the third party recovery requirement of the Medicaid Act, not the estate recovery program at issue in this case.

The plaintiffs rely on *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789 (1986), to support their argument that the Commonwealth may not invoke sovereign immunity to produce a result that amounts to unjust enrichment, or collection of the same amount from them that it already has collected from the manufacturers of tobacco products. The *Sullivan* court held that a contractor's claim against the Commonwealth was not barred by sovereign immunity, even if the contractor could not establish a direct contractual relationship, so long as the "claim ar[ose] in a contractual setting." *Id.* at 794, quoting *First Nat'l Ins. Co.* v. *Commonwealth*, 376 Mass. 248, 251 (1978). The court permitted recovery under the theory of quantum meruit and its related theory of unjust enrichment where the contractor had performed substantially, but not completely, under a contract with the Commonwealth. *J.A. Sullivan Corp.* v. *Commonwealth*, *supra* at 793-794. The court distinguished the contractor's claim for services performed pursuant to the terms of a contract from an unenforceable claim for payment of extra services, although beneficial to the recipient, rendered outside a contract. *Id.* at 793, citing *Lewis* v. *Commonwealth*, 332 Mass. 4, 6 (1954). Here, the plaintiffs' claim of unjust enrichment does not state a separate cause of action, but a theory of recovery. *J.A. Sullivan Corp.* v. *Commonwealth*, *supra*. It is based in contract law and is not a viable theory of recovery because, for reasons discussed, there was no contract in this case.

Finally, the plaintiffs contend that, to the extent their request for declaratory and injunctive relief is prospective, sovereign immunity does not apply because of the rule articulated by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). The Court in that case held that a plaintiff may maintain an action for prospective relief against a State official acting in his of-

ficial capacity, to correct an ongoing violation of the United States Constitution. The Court reasoned that where the relief sought is directed at "an illegal act upon the part of a [S]tate official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional . . . [t]he State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id.* at 159-160. The plaintiffs here have not sued any State official, but the State itself. Even if they had sued a State official, there is no constitutional issue before us. The equal protection argument in the plaintiffs' appellate brief was not raised in the trial court, so we do not consider it.[9] See *Lincoln* v. *Hillside Park 'N Shop, Inc.*, 370 Mass. 209, 216 (1976).

We further note that the relief the plaintiffs seek — declaratory and injunctive relief to prevent the Commonwealth from proceeding under its estate recovery program against the estates of persons who have died or will die of tobacco-related illnesses — would actually produce a violation of Federal law. The Medicaid Act requires participating States to maintain and operate an estate recovery program. Failure to do so places at risk continued receipt of Federal funding for Medicaid. See 42 U.S.C. §§ 1396a(a)(18), 1396c. There is no exception for the estates of persons who received Medicaid benefits for tobacco-related illnesses. Moreover, the scope of the injunctive relief sought is too broad, as it would deprive the Commonwealth of the right to recover the amount of Medicaid benefits paid to or on behalf of the plaintiffs' decedents for treatment of illnesses that were not tobacco-related.

There is one aspect of the plaintiffs' case that is not barred by sovereign immunity. The plaintiffs claim a setoff of a portion of tobacco litigation settlement funds against the benefits received for tobacco-related illnesses, a setoff that would reduce the liability of their estates. The Commonwealth argues that that claim is barred by sovereign immunity under the theory that a setoff constitutes an "accrued monetary liability" that is "in es-

---

[9]A different equal protection claim alleged in the amended complaint is not argued on appeal. It is deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

sence [an action] for the recovery of money from the [S]tate." *Edelman* v. *Jordan*, 415 U.S. 651, 663-664 (1974), quoting *Ford Motor Co.* v. *Department of Treasury*, 323 U.S. 459, 464 (1945). We are not persuaded by that argument. As previously discussed, the Legislature has created a limited waiver of sovereign immunity in the procedure by which representatives of estates may disallow claims by the Commonwealth under the estate recovery program. See G. L. c. 118E, § 32. Setoff is a basis on which the representative of an estate rationally may disallow in whole or in part a claim by the Commonwealth, with the consent of the Legislature. The ability to follow through and raise setoff as an affirmative defense in an action by the Commonwealth is implicit in the disallowance procedure.

We conclude that sovereign immunity bars the plaintiffs' action, except to the extent they seek a declaratory judgment that they are entitled to raise the defense of setoff in a claim brought against them by the Commonwealth, pursuant to G. L. c. 118E, § 32.

3. *Failure to state a claim.* Because a portion of the plaintiffs' complaint is not barred by sovereign immunity, we turn to the Commonwealth's additional ground for dismissal, namely, failure to state a claim on which relief may be granted, Mass. R. Civ. P. 12 (b) (6). We may affirm the judgment on "any ground apparent on the record that supports the result reached in the [trial] court." *Gabbidon* v. *King*, 414 Mass. 685, 686 (1993).

The Commonwealth contends that a 1999 amendment to the Medicaid Act forecloses any claim by the plaintiffs to any portion of, or interest in, the payment to the Commonwealth under the master settlement agreement with the manufacturers of tobacco products. At the time the master settlement agreement in the tobacco litigation cases was executed in 1998, Federal law required that, when a State pursued a subrogation claim and recovered from a third party, the proceeds were to be distributed in the following manner: first, to the State, an amount equal to its share of Medicaid expenditures for the individual on whose right the collection was based; then, to the Federal government, its share of the Medicaid expenditures paid on behalf of such individual; and last, any amount remaining was to be paid to

such individual. See 42 U.S.C. § 1396k(b); 42 C.F.R. § 433. 154 (2003).

In 1999, in response to the 1998 master settlement agreement, Congress passed amendments to the Medicaid Act that specified how the tobacco settlement funds were to be distributed. First, Congress eliminated any obligation on the States to reimburse the Federal government from such funds. See 42 U.S.C. § 1396b(d)(3)(B)(i). Second, and pertinent to the plaintiffs' claims, Congress provided that "a State may use amounts recovered or paid to the State as part of a comprehensive or individual settlement, or a judgment, described in clause (i) [the master settlement agreement with the manufacturers of tobacco products] for any expenditures determined appropriate by the State." 42 U.S.C. § 1396b(d)(3)(B)(ii). Six Federal Circuit Courts of Appeals have held that the plain language of § 1396b(d)(3)(B)(ii) exempts from the distribution requirements of 42 U.S.C. § 1396k(b) amounts due under the master settlement agreement, thereby foreclosing any claim to such funds by Medicaid recipients where those recipients have sued on a theory of subrogation. See *Cardenas* v. *Anzai*, 311 F.3d 929, 939-940 (9th Cir. 2002); *Barton* v. *Summers*, 293 F.3d 944, 952 (6th Cir. 2002)[10]; *Strawser* v. *Atkins*, 290 F.3d 720, 731 (4th Cir. 2002); *Tyler* v. *Douglas*, 280 F.3d 116, 122 (2d Cir. 2001); *Greenless* v. *Almond*, 277 F.3d 601, 608 (1st Cir.), cert. denied, 537 U.S. 814 (2002); *Harris* v. *Owens*, 264 F.3d 1282, 1294-1295 (10th Cir. 2001), cert. denied, 535 U.S. 1097 (2002). Two circuit courts have held that there can never be an overage available for distribution under § 1396k(b) to Medicaid recipients because the States are subrogated to the rights of recipients only to the extent of Medicaid benefits paid. See *McClendon* v. *Georgia Dep't of Community Health*, 261 F.3d 1252, 1261 (11th Cir. 2001); *Floyd* v. *Thompson*, 227 F.3d 1029, 1037 (7th Cir. 2000). One circuit court and two State appellate courts have denied relief in similar cases on the ground that the State's claim against the manufacturers of tobacco products was a direct action, and the distribution requirements of 42 U.S.C.

---

[10]The primary basis for the court's decision was sovereign immunity; 42 U.S.C. § 1396b(d)(3)(B)(ii) was a secondary basis for denying relief. *Barton* v. *Summers*, 293 F.3d 944, 955 (6th Cir. 2002).

§ 1396k(b) apply only to subrogation actions. See *Watson* v. *State*, 261 F.3d 436, 445 (5th Cir. 2001); *State* v. *Superior Court*, 83 Cal. App. 4th 597, 606 & n.9 (2000); *Brown* v. *State*, 617 N.W.2d 421, 426 (Minn. Ct. App. 2000). Every Federal Circuit Court of Appeals that has considered the question has held that a Medicaid beneficiary has no cognizable claim under the Medicaid Act to the tobacco settlement funds, irrespective of the question whether the State proceeded as subrogee or in a direct action.

Unlike cases in which the plaintiffs sought a portion of the tobacco settlement funds representing amounts recovered in excess of Medicaid benefits paid, the plaintiffs here seek a setoff against the Commonwealth's claim for reimbursement under its estate recovery program. In *Anderson* v. *Willden*, 314 F.3d 1004 (9th Cir. 2002), the plaintiffs, like the plaintiffs here, sought a portion of the tobacco settlement funds as a setoff against any debt they might owe the State of Nevada for medical care furnished under the Medicaid program. The court concluded that the plain language of 42 U.S.C. § 1396b(d)(3)(B)(ii) precludes *any* claim by plaintiffs against amounts recovered by the State from the national tobacco litigation settlement, including a claim of setoff. *Id.* at 1005-1006.

Although we have concluded that the Commonwealth proceeded against the manufacturers of tobacco products with a direct action, the distribution provisions of 42 U.S.C. § 1396k(b) would arguably still apply, especially where the Commonwealth sought restitution for health care expenses incurred under the Medicaid program in one of its prayers for relief. However, we are persuaded that the plain language of 42 U.S.C. § 1396b(d)(3)(B)(ii) precludes any claim against the Commonwealth for any amount received by the Commonwealth under the master settlement agreement, including a claim of setoff in a proceeding under the estate recovery program, G. L. c. 118E, §§ 31, 32. Congress amended the Medicaid Act specifically to exempt amounts received under the master settlement agreement from distribution under 42 U.S.C. § 1396k(b), leaving all such amounts to be spent in the sole discretion of the States. We conclude that the plaintiffs have failed to state a claim for relief and are not entitled to any interest, including

any interest in the form of a setoff or reduction in the estates' liability, in the amounts received by the Commonwealth under the master settlement agreement.

4. *Miscellaneous issues.* The plaintiffs' failure to state a claim under the Medicaid Act defeats their claims under the Federal and State civil rights acts, 42 U.S.C. § 1983, and G. L. c. 12, § 11I, respectively, based on the Medicaid Act. See *Maine* v. *Thiboutot*, 448 U.S. 1, 4 (1980) (§ 1983); *Howcroft* v. *Peabody*, 51 Mass. App. Ct. 573, 593 (2001) (§ 11I). In addition, the complaint fails to allege any threats, intimidation, or coercion by the Commonwealth, an essential element of a claim under the State civil rights act. See *Brunelle* v. *Lynn Pub. Schs.*, 433 Mass. 179, 184 (2001).

Because of the conclusion we reach, we need not address the Commonwealth's claim of waiver under G. L. c. 118E, § 32.

*Judgment affirmed.*